**D & M CONTRACTORS, INC.,**
**Employer-Appellant,**

v.

**Humberto FORLANO, Employee-Appellee.**

Superior Court of Delaware,
New Castle.

Oct. 20, 1971.

B. Wilson Redfearn, of Tybout, Redfearn & Schnee, Wilmington, for employer-appellant.

Howard M. Berg, of Berg & Taylor, Wilmington, for employee-appellee.

STIFTEL, President Judge.

It is difficult from the record to follow the procedural sequence in this case. Apparently, Humberto Forlano petitioned for commutation (19 Del.C. § 2358) of payments due in the future under section 2324. There was a hearing thereunder and the Board granted commutation of all payments due under section 2324 for the life expectancy of the claimant. There was a motion for reargument by the employer and at the same time it moved for commutation of permanent partial disability pay-

ments under 19 Del.C. § 2326, in which petition the claimant joined.

The Board approved a supplemental agreement for permanent partial benefits under section 2326 of 100% loss of use of claimant's left leg and 45% loss of use of his right leg and with the approbation of both sides, determined that in "the best interests of Humberto Forlano", the total disability compensation due be commuted to $15,114.40. On the section 2324 commutation decision, the Board had already determined to award the sum of $34,548.15 to claimant. On reargument, the commutation award under section 2324 was upheld by the Board.

The employer asks this Court to review this decision of the Industrial Accident Board and the decision of the Board to award attorney's fees to petitioner's attorney.[1]

This is a sad case of serious injury. Petitioner is a married man with two children. He is a native of Argentina and worked in his native country and in Mexico before coming to the United States where he became employed by his late uncle in the construction business. In the course of his employment, on May 12, 1969, he fell from a scaffold. As a consequence of this fall, he lost all use of his left leg and 45% loss of use of his right leg.

Dr. William Kraut, his neurological surgeon, explained that in addition to his leg disabilities, he also suffers from loss of voluntary control of his bowels and bladder and loss of all touching sensation around his buttocks. His left leg is always braced and has no supporting function at all. He can support his own weight with his right leg for no more than two hours at a time, but he can only move about with the aid of two canes. When he laughs and coughs, he wets himself. Also, he can no longer

---

1. The information about reargument comes from the briefs. There is nothing in the record sent up from the Board which indicates a hearing on the reargument and a subsequent denial decision. In fact, it appears that the reargument may have taken place after the case was appealed.

have physical relations with his wife. He has emotional and other physical problems as well. The nature of his total physical injuries is generally conceded.

Even though claimant had very little schooling in Argentina, nevertheless, he constantly worked toward trying to improve himself and evidenced great energy in this direction. The 1969 accident makes it impossible for him to ever work at his former employment as a construction worker.

The claimant has not sought any rehabilitation here. In fact, he has suffered fits of depression and has contemplated suicide. He says his only hope for salvation is for him to return to Argentina where he has many friends and family. At the time of the main hearing before the Board, his wife and children had returned home to his own family in Argentina at his request because of his inability to support them on his modest income from workmen's compensation benefits. Much of his depression could be attributed to the separation from his wife and children; but apparently, at about the time of the reargument, his wife had returned to the United States to be with him and to help him.[2] However, he is still very much interested in going back to Argentina to live permanently. He believes that with the large sum of commutation money, he might be able to succeed in doing something economically worthwhile, that rehabilitation in a strange country like the United States would be impossible in his depressed and melancholy state, that his only hope for the future is to be with his wife, his children, relatives and friends back in Buenos Aires.

All the doctors who testified agree that he should be back in Argentina where he can get friendship, warmth and help and possibly motivation. There is no doubt that his major injuries are permanent and that he will not improve. His inability to earn money by working could, however, improve—but only in Argentina.

In conformity with the foregoing, Dr. William Kraut testified (T. 33, 34):

"He seems to want to do something, but not to do anything here in the country."

The doctor also explained that vocational rehabilitation in this country would be no good for him, that he wouldn't accept it, that he definitely could not live by himself, feed and take care of himself. In fact, the doctor opined that "he is essentially an isolated individual here and fortunately, he wants very much to go back to his own country." Even back in his own country, his life expectancy would be reduced some 40% from a normal life expectancy. This for the reason that he has major urinary tract infection and a general breakdown in the skin causing poor circulation, which results in loss of blood supply and death of cells, and ultimately could result in big ulcers in the skin. (T. 50).

Dr. Haynes B. Cates, an orthopedic surgeon, who saw Mr. Forlano in the hospital daily over a period of several weeks and then occasionally in the Eugene duPont Convalescent Hospital, and who got to know him very well, believed that Argentina would be the place for him to go and that he would be a "good candidate for vocational rehabilitation, with the understanding, however, that no-one in his condition could ever return to the normal work stream." (T. 63).

Dr. Anthony L. Cucuzzella, a physical medicine specialist, expressed the same view (T. 77), namely, that it would be in Forlano's best interests to return to Argentina. In fact, he stated:

"Based upon my knowledge of the patient, conversation with the patient, knowing something about his family background, and conversation on and off

2. The formal record does not disclose the return of his wife to the United States but this information was derived from the reply brief of appellee.

over several months period with his family, and the man's own personal feelings that my recommendation to him would be to return to Argentina."

The doctor also mentioned that a partial paraplegia, such as he is, with his other complications, would have 60 to 70% of his normal life expectancy.

Dr. Melvin Gelof, a clinical psychologist, had special appreciation for petitioner because he speaks four languages and thought that he might some day, with proper rehabilitation, work as an interpreter in Delaware. (R. 95). Actually, he has had no formal education in any of the languages he knows.

Dr. Gelof expressed his philosophy that "almost everybody is a good candidate for vocational rehabilitation and we have no right to rule anybody out, no matter how poor the prognosis." He was not asked for an opinion on whether or not claimant should return to Argentina but dealt only with his chances for rehabilitation—his field.

Mr. Forlano summed it up when he said (T. 109):

"Because first of all, I go to Argentina and live among my people. And, second, because with my knowledge of life after 36 years that I am in this health, and I guess I can go in business by myself and not depend on nobody. I can set up a business. I know how to do it. I have the knowledge. I have now knowledge of United States, how the people work, how the people make business. This is really work in my favor very, very much if I go to Argentina. In Argentina the people appreciate everybody who comes from the United States."

■ Section 2358 permits commutation of an award under section 2324. Its use is not favored. See Molitor v. Wilder, Del.Super., 195 A.2d 549, aff'd 196 A.2d 214. Petitioner for commutation has the burden of establishing before the Board his right to it. On this appeal, however, appellant-employer must show that the Board rendered its decision without competent substantial evidence to support it. The record evidence shows an individual with permanent physical problems which render him unable to work in any suitable job commensurate with his qualifications and training. See Federal Bake Shops, Inc. v. Maczynski, Super.Ct., 4 Storey 484, 180 A. 2d 615, 616. Dr. Cates mentioned that even with vocational rehabilitation, he could never really return to the normal work stream.

Dr. Gelof merely expressed the belief that everybody has a chance to be rehabilitated no matter how poor the prognosis.

■ Even though the medical witnesses expressed the hope of a possibility for rehabilitation, the Board obviously inferred from the evidence that his injuries were such that he could not, in all probability, obtain employment that was commensurate with his training and qualifications for the rest of his life expectancy. It was not the petitioner's burden to show utter helplessness in order to establish total disability. See M. A. Hartnett v. Coleman, Del.Supr., 226 A.2d 910.

■ The employer objected to the use by the Board of the American life expectancy tables for American males. Employer claimed that since the petitioner would return and live in Argentina for the rest of his natural life, that the life expectancy tables for male Argentinians should have been used. Appellant did not claim that the Argentinian tables differed from the American tables. There is no evidence that it ever supplied such tables for the assistance of the Board. Under the circumstances, the Board had the right to rely on the American tables which were readily available to it.

■ The need for commutation is obvious. All of the doctors testified that his only hope for the future would be as a res-

ident of Argentina, living with his family and associating with his friends back in a familiar environment. There seems to be no real opposition to this line of thinking. The employer, during the pendency of this petition for commutation under § 2324, requested commutation under § 2326, implying that the commutation was in the best interests of petitioner. Further, under § 2358, where the petitioner is about to remove himself from the United States, commutation is in order. The Board believed there was no doubt about this occurring.

The employer claims that the Board violated Rule 17(b) of the Rules of the Industrial Accident Board, promulgated on November 1, 1966. Rule 17 reads as follows:

"Attorney's Fees

"(A) Upon application to the Board for attorney's fees, the services rendered the injured employee, as well as the time spent and uniqueness of the case, will be considered in determining the allowance of attorney's fees.

"(B) No attorney's fee will be allowed for the presentation of commutation petitions or petitions for disfigurement."

This rule states that where commutation was involved, no attorney's fee can be had.

■■ The Board, nevertheless, allowed attorney's fee of $2,250. It rationalized its allowance by stating that "Claimant's attorney has changed the status of the award from temporary total to permanent total." In Berryman v. John F. Casey Co., Super. Ct., 251 A.2d 565, this Court allowed an attorney's fee in similar circumstances. In the principal case, the Board cites *Berryman* to substantiate its award based on a change of status from temporary total disability to permanent total disability under section 2324. In Ernest DiSabatino & Sons, Inc. v. Apostolico, Del.Supr., 269 A.2d 552, our Supreme Court suggests, on page 553, that the words "permanent" and "temporary" do not appear in section 2324. It is troubling, therefore, to accept the change of status doctrine. It is hard to comprehend a situation where commutation is allowed under section 2324 where there would not be a change of status under the Board's interpretation. It appears, thus, that the Board did not clearly mean that Section 17(B) should be applicable to commutations under section 2324. This is understandable in light of the fact that practically all commutations, if allowed, would normally occur under section 2326. Commutation under § 2324 is a rarity. It would appear that the full Board, which enacted the rule, has impliedly amended it by its decisions. In no event does § 2127, the attorney fee statute, bar a fee under these circumstances.

The Opinion of the Board is affirmed.

It is so ordered.