Howell DAMERON, Appellee,

v.

NEUMANN BROTHERS, INC., Employer,

and

Bituminous Insurance Co., Insurance Carrier, Appellants.

No. 68786.

Supreme Court of Iowa.

Oct. 19, 1983.

William D. Scherle of Hansen, McClintock & Riley, Des Moines, for appellant.

Fred D. Huebner of Hopkins & Huebner, Des Moines, for appellee.

Considered by REYNOLDSON, C.J., and McCORMICK, McGIVERIN, CARTER and WOLLE, JJ.

WOLLE, Justice.

The narrow question on this appeal is whether Howell Dameron should be allowed to receive in one commuted lump sum payment the lifetime worker's compensation benefits awarded to him in a decision of the Iowa industrial commissioner. The larger question is how restrictive should be the guidelines applied by the industrial commissioner in determining whether commutation is in the best interests of a worker's compensation claimant. Dameron applied for commutation pursuant to Iowa Code section 85.45 (1981), and despite vigorous protest by the employer and insurance carrier, a deputy industrial commissioner, the commissioner, and the district court on judicial review all upheld his request. We affirm, finding that the industrial commissioner measured the request for commutation by appropriate standards and substantial evidence in the record as a whole supports the decision approving commutation.

Dameron sustained a job-related injury on October 24, 1978. In an arbitration decision filed on March 10, 1981 the industrial commissioner found that Dameron was totally and permanently disabled and awarded him lifetime periodic payments of $222.50 per week. Upon receiving the award, Dameron immediately requested that instead of receiving periodic payments he be paid the lump sum commuted value of the award which by reason of the statutory discount rate would be the sum of $131,058.93. Because the employer and insurance carrier objected that commutation would not be in Dameron's best interests, an evidentiary hearing was held before a deputy industrial commissioner who approved commutation. Upon further review, the industrial commissioner and subsequently the district court both affirmed the decision.

In this appeal, the employer and insurance carrier make essentially three arguments: (1) that the industrial commissioner

failed to apply his own procedural rules which constituted prerequisites to commutation which Dameron failed to satisfy; (2) that the industrial commissioner applied incorrect guidelines in determining whether commutation was in Dameron's best interests; and (3) that the facts of this case do not support commutation of Dameron's compensation award.

## I. *The Commissioner's Rules.*

At the threshold is the contention that Dameron's petition for commutation was insufficient because it failed to satisfy certain requirements of the industrial commissioner's administrative rules. The cited rules were part of the chapter entitled "Settlements and Commutations," and the section entitled "Commutation" purported to list informational prerequisites which "must be met before a commutation will be considered or granted." Iowa Admin.Code §§ 500–6.1 to 6.2(6). Addressing this issue, the deputy industrial commissioner held that those rules were not applicable to contested cases but rather were designed only for cases in which the parties jointly submit written documentation to the commissioner for approval.

We adopt the deputy's interpretation of the rules for two reasons. First, it is a logical and sensible interpretation. The entire chapter, of which the cited rules are a part, concerns information which the deputy reviewing an uncontested written application would need to have, but which in a contested case would more effectively be presented through detailed oral testimony. A second reason for adopting the deputy's interpretation is that we give administrative tribunals a reasonable range of informed discretion in the interpretation and application of their own administrative rules. *See Davenport Community School District v. Iowa Civil Rights Commission,* 277 N.W.2d 907, 909–10 (Iowa 1979). A court may turn to the administrative construction of an administrative regulation if the meaning of the words used is in doubt; the administrative interpretation "becomes of controlling weight unless it is plainly

erroneous or inconsistent with the regulation." *Bowles v. Seminole Rock & Sand Co.,* 325 U.S. 410, 413–14, 65 S.Ct. 1215, 1217, 89 L.Ed.2d 1700, 1702 (1945). We therefore reject the contention of the employer and insurance carrier that the industrial commissioner should have refused to consider or grant Dameron's application for commutation because it did not satisfy requirements of the commissioner's cited rules.

## II. *Principles for Deciding Commutation Cases.*

The primary contention of the employer and insurance carrier is that the industrial commissioner applied incorrect guidelines in allowing commutation of Dameron's award. They ask that we reconsider the principal Iowa case which addresses the propriety of commutation, *Diamond v. Parsons Co.,* 256 Iowa 915, 129 N.W.2d 608 (1964). The thrust of their argument is that the *Diamond* principles which were followed by the industrial commissioner are less restrictive than those applied in other states and should be replaced by more stringent prerequisites for commutation which would make allowance of commutation the exception and periodic payments the rule in Iowa.

A. Reasons for reconsidering *Diamond.* It is appropriate that we reconsider *Diamond* for several reasons. First, the underlying statutory authority for allowing commutation, Iowa Code section 85.45–.46, was amended in 1970 to provide that the industrial commissioner rather than a court of equity should decide whether to allow commutation. *See* 63 G.A. ch. 1051, §§ 14–15 (1970). Iowa Code section 85.45, under which Dameron's request for commutation was approved, provides in pertinent part as follows:

Future payments of compensation may be commuted to a present worth lump sum payment on the following conditions:

· · · · ·

2. When it shall be shown to the satisfaction of the *industrial commissioner* that such commutation will be for the best interest of the person or persons

entitled to the compensation or that periodic payments as compared with a lump sum payment will entail undue expense, hardship or inconvenience upon the employer liable therefor.

Iowa Code § 85.45 (1981) (emphasis added). When *Diamond* was decided in 1964 the same statute provided that the "court or judge," not the industrial commissioner, must be satisfied that the commutation is in the best interest of the claimant.

■ A second reason for revisiting *Diamond* is that the legislature has since 1964 adopted the Iowa Administrative Procedure Act which delineates the standards for courts to apply when reviewing administrative decisions, including decisions of the industrial commissioner. *See* 67 G.A. ch. 51 § 21 (1977); Iowa Code §§ 17A.19, 86.26 (1981). No longer is a contested commutation case decided de novo by the reviewing court sitting as a court of equity as in *Diamond*. *See* Iowa Code § 85.46 (1963). Where, as here, the industrial commissioner in a contested case proceeding has determined that commutation was in the best interests of the claimant, the trial court and this court are now bound by that determination unless it is "unsupported by substantial evidence in the record made before the agency when the record is viewed as a whole." Iowa Code § 17A.19(8)(f). Finally, it is important that the *Diamond* principles be reconsidered because the industrial commissioner has cited *Diamond* and applied its rationale not only in this case but in many other commutation decisions. *See, e.g., Watters v. Clinton Engines Corporation* (Iowa Industrial Commissioner, March 31, 1983); *Thompson v. Thompson Pipeline & Utilities Co.*, (Iowa Industrial Commissioner, February 29, 1980).

B. What *Diamond* Decided. Turning to the *Diamond* case, we find that our court there first restated the pertinent statutory prerequisites for commutation and then discussed the considerations involved in determining what is in the best interests of the injured worker. One of the statutory prerequisites *Diamond* addressed is not here in issue, that being the question whether the period during which compensation is payable is definitely determinable. Iowa Code § 85.45(1) (1983); *see Diamond*, 256 Iowa at 924, 129 N.W.2d at 614. What *Diamond* said about best interests of the claimant, however, is at the heart of the instant case and based on very similar facts. There, as here, the worker was in his mid-sixties, in debt, and without skill or experience in managing investments. The claimant in *Diamond,* like the claimant Dameron here, wanted first to pay his bills, then use the income from the investment of the remaining lump sum balance as an earnings substitute. This court approved commutation, saying:

> The statute says nothing about denying commutation because of expense, hardship or inconvenience to the employer. We have here only the question of the best interests of the claimant.

> . . . . .

> [I]n determining the "best interest of the person or persons entitled to the compensation" as required by the statute, claimant's condition and life expectancy may properly be considered along with other matters. Here, under weekly payments, if claimant lives out his expectancy, he will outlive his compensation period and be left with nothing. If he dies prematurely his total weekly payments may be less than the present commuted value.

> Based upon claimant's estimates and desires, the benefits and convenience from improved living quarters, the availability of family help, the testimony of real estate agents, and all surrounding circumstances, the trial court approved commutation. Whether the court was right in attempting to look into the future only the passage of time will tell. Claimant's plans may not develop as profitably as he hopes but they are not unreasonable. He may invest or spend unwisely but that possibility is present in every petition for commutation.

> The court should not act as an unyielding conservator of claimant's property and disregard his desires and reasonable

plans just because success in the future is not assured.

256 Iowa at 928–29, 129 N.W.2d at 616–17. In summary, *Diamond* held that the decision whether to allow commutation must turn on the statutory guideline, best interest of the claimant, and the focus should be on the worker's personal, family, and financial circumstances, and the reasonableness of the worker's plans for using the lump sum proceeds. Consequently, factors which can be distilled from the *Diamond* analysis include the following:

> 1. The worker's age, education, mental and physical condition, and actual life expectancy (as contrasted with information provided by actuarial tables).
>
> 2. The worker's family circumstances, living arrangements, and responsibilities to dependents.
>
> 3. The worker's financial condition, including all sources of income, debts and living expenses.
>
> 4. The reasonableness of the worker's plan for investing the lump sum proceeds and the worker's ability to manage invested funds or arrange for management by others (for example, by a trustee or conservator).

Ultimately, the *Diamond* analysis involves a benefit-detriment balancing of factors, with the worker's preference and the benefits to the worker of receiving a lump sum payment weighed against the potential detriments that would result if the worker invested unwisely, spent foolishly, or otherwise wasted the fund so it no longer provided the wage-substitute intended by our worker's compensation law. Under the last two paragraphs quoted above from the *Diamond* opinion, however, a request for commutation is approved on the best-interest balancing test unless the potential detriments to the worker outweigh the worker's expressed preference and the demonstrated benefits of commutation. Cases from other states with a similar best interest guideline have approved commutations after consideration of these same types of factors. *See, e.g., Polich v. Whalen's O.K. Tire Warehouse,* 634 P.2d 1162, 1165 (Mont.1981); *Co-*

*dling v. Aztec Well Servicing Co.,* 89 N.M. 213, 215–17, 549 P.2d 628, 630–32 (Ct.App. 1976); *Smith v. Gallatin Nursing Home,* 629 S.W.2d 683, 684–85 (Tenn.1982).

C. *Diamond* Principles Reaffirmed. Upon reconsideration of the *Diamond* case, we reaffirm that decision because it is consistent with the intent of our legislature and provides adequate general guidelines for the industrial commissioner who must decide what is in the best interest of each worker on a case by case basis.

The employer and insurance carrier urge us to adopt more stringent tests like those espoused by Arthur Larson in his widely read treatise. Larson does advocate on general policy grounds very tough standards which must be met by any person seeking commutation; his treatise states:

> In some jurisdictions, the excessive and indiscriminate use of the lump-summing device has reached a point at which it threatens to undermine the real purposes of the compensation system. Since compensation is a segment of a total income insurance system, it ordinarily does its share of the job only if it can be depended on to supply periodic income benefits replacing a portion of lost earnings. If a partially or totally disabled worker gives up these reliable periodic payments in exchange for a large sum of cash immediately in hand, experience has shown that in many cases the lump sum is soon dissipated and the workman is right back where he would have been if workmen's compensation had never existed.

3 A. Larson, Workmen's Compensation Law § 82.71, at 15–573 (1983 ed.). Significantly, however, Larson continues his analysis of what he calls "lump-summing" by stating:

> The beginning point of any consideration of the justifiability of lump-summing in a particular case is the standard set by the statute.

*Id.* § 82.72, at 15–575. Although Larson believes that statutes which turn commutation on the best interest of the claimant (like Iowa Code section 85.45) are "so general . . . as to supply little firm guidance and control," we believe that our industrial com-

missioner has found our statute and the *Diamond* analysis sufficient for deciding satisfactorily each individual commutation case. In approving Dameron's commutation request in this case, the industrial commissioner quoted portions of the above discussion from Larson's treatise but concluded:

> Despite the rational reasoning in support of the more restrictive views on commutation of compensation benefits, the *Diamond* guidelines still prevail in Iowa. Relying on *Diamond* and claimant's substantial monetary resources, excluding weekly compensation benefits, this commissioner would be hard-pressed to conclude that a lump-sum payment would not be in the best interests of claimant, notwithstanding the periodic payment philosophy of wage replacement upon which the theory of workers' compensation is based.

Notwithstanding changes in Iowa Code section 85.45 since the *Diamond* decision, our legislature has retained "best interest of the claimant" as the fundamental touchstone for deciding commutation cases. Had the Iowa legislature intended or preferred a more restrictive approach and more stringent standards than *Diamond* suggested, tougher requirements would have been enacted when section 85.45 was amended to shift to the industrial commissioner the responsibility to make the initial "best interest" determination in contested cases.

We further believe that the *Diamond* analysis, with its emphasis on the worker's own personal and financial circumstances, makes good sense. We reemphasize what *Diamond* specifically highlighted—commutation turns on what is in the best interest of the worker, not on what is in the best interest of the employer or insurance carrier. (We note that the statute does provide also for commutation upon a showing "that periodic payments will entail undue expense, hardship, or inconvenience upon the employer liable therefor," but that is not involved as an issue in this case.)

Consequently, we find that the industrial commissioner correctly applied *Diamond* guidelines in considering Dameron's request for commutation. The employer and insurance carrier have failed to show that more restrictive guidelines would better serve the interests of the persons whose best interests are at stake, worker's compensation claimants like Dameron.

## III. Was Commutation in Dameron's Best Interest?

Finding that the industrial commissioner applied legally sound guidelines in considering and determining whether commutation was in Dameron's best interest, we turn to the question whether the commissioner's approval of commutation was supported by substantial evidence. This being a contested case within the meaning of the Iowa Administrative Procedure Act, we review the record in the manner specified in Iowa Code section 17A.19(7) and determine whether the commissioner's fact findings are supported by substantial evidence in the record viewed as a whole. Iowa Code §§ 17A.19(8), 86.26 (1981); *see Farmers Elevator Co. v. Manning,* 286 N.W.2d 174, 176 (Iowa 1979). The commissioner found that a lump sum award would serve Dameron's best interests in several ways; each is supported by more than adequate evidence.

Dameron was 63 years of age, divorced, and partially supporting his ex-wife, the two children she had adopted, and the woman with whom he was living. He had only a third grade education. Though his monthly earnings before the accident exceeded $1,500, he had never used bank or savings and loan accounts but was generally able to make ends meet. After the accident, he encountered considerable additional expense and incurred substantial indebtedness, which necessitated borrowing at high interest rates. He owed substantial attorney's fees as a result of the contested worker's compensation proceedings.

The evidence showed and the industrial commissioner found that commutation was advantageous to Dameron in several important respects. Fundamentally, Dameron's evidence showed that his financial condition would be greatly improved if he could im-

mediately receive the entire lump sum payment in contrast to weekly payments otherwise due him. The establishment of a voluntary conservatorship, proposed by Dameron and ordered by the commissioner, would require the conservator to provide an annual accounting of Dameron's income and expenses. See Iowa Code § 633.670 (1981). All of his outstanding bills, including that for attorney's fees arising from the worker's compensation proceedings, would be paid from the lump sum received. Even after those substantial bills were paid, the funds remaining for investment would provide him with about the same regular payments as the weekly compensation payments he would otherwise have received in the absence of commutation. That remarkable record-supported finding resulted from the fact that the discount rate applicable to the commutation in this case was 5%, in contrast with the 12% to 14% investments which the evidence showed were prudent and available. [The discount rate for commutation is now 10%. Iowa Code §§ 85.47, 535.3 (1983).] Consequently Dameron was able to show that the combination of commutation and a conservatorship would considerably improve his financial condition while also bringing an order to his financial affairs which previously had been lacking. Measured by *Diamond* standards, commutation was clearly shown to be in Dameron's best interest.

 The employer and insurance carrier challenge the commissioner's findings and decision in two additional respects. They question the permanency of the voluntary conservatorship, yet fail to note that a voluntary conservatorship cannot be terminated without court approval. To terminate the conservatorship, Dameron would have to establish that continuation of the conservatorship would be unnecessary or not in his best interests. Iowa Code § 633.675(3), (4) (1983). Finally, the employer and insurance carrier also protest Dameron's expressed desire to receive a lump sum payment so he can leave a substantial estate when he dies, contending that the issue is Dameron's own best interests, not the best interests of his survivors. We need not

here decide whether accumulation of an estate is in itself a sufficient basis for commutation. Although Dameron did express interest in accumulating an estate, the industrial commissioner seems to have given that factor little or no weight in deciding to approve commutation. It is noteworthy that in a 1974 decision the industrial commissioner, in denying commutation, expressly stated that "the purpose of leaving an estate . . . does not fall within the purposes of commutation or the Iowa Workman's Compensation Law," *Mahaffey v. Cardinal Cleaners* (Iowa Industrial Commissioner, April 8, 1974). In any event Dameron's other reasons for commutation were legally sufficient and fully supported by evidence in the record as a whole.

The district court found adequate support in the record for the industrial commissioner's decision to commute Dameron's worker's compensation award. We too find adequate legal and factual support for that decision.

AFFIRMED.