No. 87-368

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

_____

MICHELLE M. DANIELS,

        Claimant and Appellant,

    -vs-

KALISPELL REGIONAL HOSPITAL,
        Employer,
    and
EBI/ORION GROUP,

        Defendant and Respondent.

_____

APPEAL FROM: The Workers' Compensation Court, The Honorable Timothy
Reardon, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Terry N. Trieweiler argued, Whitefish, Montana

    For Respondent:

        Paul C. Meismer argued; Garlington, Lohn & Robinson,
        Missoula, Montana

_____

Submitted: January 12, 1988

Decided: February 18, 1988

Filed: FEB 1 8 1988

*Ethel M. Harrison*
_____
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Michelle Daniels, age 32, suffers from anaphylactic reactions that first occurred while she was wearing latex surgical gloves and working as a nurse's aide at the Kalispell Regional Hospital, a Plan II employer. The Workers' Compensation Court determined that Ms. Daniels was permanently and totally disabled and entitled to $128.35 in compensation per week after adjustment for Social Security offsets. It denied conversions to lump sum totalling nearly $140,000 to allow her money to purchase a house and also to start a backhoe excavation business. Ms. Daniels appeals the denial of the lump sum request. The insurer likewise appeals claiming Ms. Daniels suffers from an occupational disease not an injury.

On April 2, 1985, Ms. Daniels wore surgical gloves for the first time as a nurse's aide. The gloves are coated with a fine talc powder to ease in wearing and removing them. Ms. Daniels' hands immediately began to burn and itch so she removed the gloves. She then rubbed her eyes, which also became inflamed. Dr. Marise Johnson saw the claimant, believed her to be suffering an allergy attack, and controlled the problem with administration of Benadryl. On May 21, 1985, Ms. Daniels completed her workshift and then saw Dr. Johnson about cramps and nausea. Dr. Johnson conducted a pelvic- rectal examination, including a barium enema. As the enema began, Ms. Daniels became anxious and her pulse increased while her blood pressure dropped. Dr. Johnson diagnosed this as anaphylactic shock, which is a potentially life-threatening physiological condition caused when the patient comes into contact with an element to which she is sensitive, causing the patient's blood vessels to

2

dilate and leaving the heart with less blood to pump to the lungs, kidneys, brain and other vital organs.

Dr. Johnson and specialists in Missoula and at the University of Washington Medical School have concluded the talc powder on surgical gloves triggered Ms. Daniels' initial reactions. Ms. Daniels has since left the hospital job, but her exposure to the talc on the observation gloves harmed her immune system resulting in an increased tendency to have anaphylactic reactions. She attended training for certain clerical jobs, the stress of which caused reactions forcing her to give up the retraining.

She and her family live thirty miles from Kalispell and the nearest medical help. The area is not served by ambulance. She contends that because neither she nor her husband has a job they cannot afford a telephone. Husband claims he is unable to leave the house to look for work since Ms. Daniels then would have no access to medical care.

Ms. Daniels sought to convert $39,000 of her award to a lump sum to finance the start-up of an excavation business in which she would do office work out of the home and her husband would operate the backhoe. She also sought $100,000 in lump sum for purchase of a house nearer to Kalispell--but not in town--that would be large enough for the couple's home and the business office and would have a shop with sufficient space for storing a backhoe and equipment.

The Workers' Compensation Court considered the two aspects of the lump sum request separately. It ruled that the $39,000 business request was not justified:

> Claimant's business proposal fails in two respects. First, claimant's involvement in the business is so marginal that this is more of a passive investment than a business venture. Second, . . . the court is unconvinced that the business has a chance of success reasonable enough

3

to justify risking a substantial portion
of claimant's entitlement.

It noted that the $100,000 housing request could not be severed from the business request:

The proposed utilization of a lump sum to purchase living quarters to suit the very unique needs of this claimant and her family would be appropriate under different evidence. At bar, the housing acquisition was dependent on the business to replace the lost compensation money when the advance was credited. Since we are convinced that the business had little likelihood of success, the financing of the home would reduce claimant's family income to the point where they could not afford to pay for groceries, utilities and other basic needs. Thus, the use of funds to buy a home would not be in claimant's best interests since the family would not be able to keep it.

While this court is very sympathetic toward claimant and appreciates the dilemma she has, the court cannot increase her entitlement beyond that allowed by law. Under the facts presented here, the court has no options, but if suitable housing could be located and found at a price which would allow a lump sum advance, but still retain sufficient monthly income to sustain claimant's family, the court would encourage the parties to come to an agreement. Or--if need be--to return to court.

Basically, four issues are presented for review:

(1) Did Ms. Daniels suffer an injury or an occupational disease?

(2) Is Ms. Daniels' condition stable enough to be designated permanent and total, thus allowing a determination of disability and an award of benefits?

4

(3) Does substantial credible evidence support the Workers' Compensation Court's denial of a $39,000 lump sum for the business?

(4) Does substantial credible evidence support that court's denial of a $100,000 lump sum for more adequate housing?

We affirm the court's judgment as it was issued.

ANAPHYLACTIC CONDITION AS INJURY

Section 39-71-119, MCA (1983), defined an injury as "a tangible happening of a traumatic nature from an unexpected cause or unusual strain resulting in either external or internal physical harm . . . " An injury is distinguished from disease by time definiteness and unexpectedness. Wise v. Perkins (1983), 202 Mont. 157, 166, 656 P.2d 816, 820. When a worker is exposed to a harmful substance at one instant or during one distinct period, the result may be an injury. In Wise, the claimant was a bartender who was suddenly rescheduled to operate a tavern by herself during the New Year's holidays. This entailed working double shifts to clean the bar during the day, open the bar in the early evening and lastly to close the bar. Subsequently, she contracted phlebitis. Two doctors testified that the amount of standing required by this situation contributed to her phlebitis, which provided a time definite and qualified the condition as an injury. The presence of an underlying disease does not preclude recovery under the Workers' Compensation Act. Wise, 656 P.2d at 820.

The insurer claims that no time definite can be found here because Dr. Johnson testified that Ms. Daniels suffers from an underlying disease that lay dormant until she first wore the surgical gloves. We rejected that argument in Bremer v. Buerkle (Mont. 1986), 727 P.2d 529, 43 St.Rep.

5

1942. There we concluded that an auto body repairman who had worked with certain chemicals for nine years had suffered both an occupational disease and an injury when one exposure to the chemicals produced allergic contact dermatitis. Because it was both an occupational disease and an injury, this Court said he could choose his remedy. Bremer, 727 P.2d at 533, citing Ridenour v. Equity Supply Co. (1983), 204 Mont. 473, 665 P.2d 783.

It appears in Bremer that the claimant's condition could not have been expected since he had worked with the chemicals for nine years with no difficulties until February 17, 1983. This is in contrast with Greger v. United Presstress, Inc. (1979), 180 Mont. 348, 590 P.2d 1121. In Greger, a cement company changed the chemical additives it used. The claimant noticed an allergic reaction on his hands but continued to work until being laid off. When he was called back to work the allergic contact dermatitis began again at which point he saw a doctor. The doctor diagnosed claimant's allergic reaction to the chemical additives. We held that the claimant qualified only for occupational disease benefits since he had suffered from the condition previously and the condition was not totally unexpected. Greger, 590 P.2d at 1124.

Like the claimant in Bremer, Ms. Daniels meets the requirements of Wise. It is undisputed that her first reaction occurred on April 2, 1985. Furthermore, her reaction was unexpected since she had been around the hospital for several months as a trainee, had learned how to wear and to remove the gloves during her training, and had not suffered any ill effects. She also has a history of at least two surgeries by gloved surgeons that produced no reactions. We find that there is substantial evidence for the decision of the Workers' Compensation Court and refuse to

reverse it. Ms. Daniels' anaphylactic condition is marked by a time definite and was unexpected, thus qualifying as an injury under the Workers' Compensation Act.

MEDICAL STABILITY AND BENEFITS

The Workers' Compensation Court found that Ms. Daniels has been unable to undergo further training because of her anaphylactic condition and that Dr. Johnson testified the condition could not be cured. The insurer argues this is an inadequate basis for permanent total disability since the physician did not testify that Ms. Daniels had attained medical stability.

Section 39-71-116(13), MCA (1983), defined permanent total disability as:

> [A] condition resulting from injury as defined in [the Workers' Compensation Act] that results in the loss of actual earnings or earning capability that exists after the injured worker is as far restored as the permanent character of the injuries will permit and which results in the worker having no reasonable prospect of finding regular employment of any kind in the normal labor market . . .

The claimant must prove by a preponderance of medical evidence that she has no reasonable prospect of re-entering the normal labor market to qualify as permanently totally disabled. Bundtrock v. Duff Chevrolet (1982), 199 Mont. 128, 131, 647 P.2d 856, 857-58. Because Ms. Daniels could not be cured, Dr. Johnson testified that she could not return to a job where she could not control her environment. Ms. Daniels has worked as a bartender, a convenience store clerk, and as a nurse's aide. Because a worker in such jobs typically cannot control the job environment, Ms. Daniels cannot return to them. That being so, the Workers' Compensation Court did

7

not err in designating the claimant as permanently and totally disabled. Wise, 656 P.2d at 819. The court then properly made the award of the weekly rate that the parties had agreed to.

PARTIAL CONVERSION OF BENEFITS TO LUMP SUM

Although benefits generally are to be paid on a periodic basis, § 39-71-741, MCA (1983) allows lump sum awards if they would be to the claimant's best interests. Utick v. Utick (1979), 181 Mont. 351, 355, 593 P.2d 739, 741. Lump sums also may be made to clear up a claimant's outstanding debts or to satisfy her pressing needs. Belton v. Carlson Transport (Mont. 1986), 714 P.2d 148, 150, 43 St.Rep. 286, 288; Willoughby v. Arthur McKee & Co. (1980), 187 Mont. 253, 257, 609 P.2d 700, 702. This Court will not, however, disturb a denial of lump sum unless the claimant can show an abuse of discretion. Krause v. Sears Roebuck & Co. (1982), 197 Mont. 102, 107, 641 P.2d 458, 460; Ruple v. Peterson Logging Co. (Mont. 1984), 679 P.2d 1252, 1254, 41 St.Rep. 704, 706.

Was the refusal to provide a $39,000 lump sum for the business an abuse of discretion?

A vocational counselor, whose husband coincidentally ran a backhoe operation, drew up the Danielses' plan relying on the experience of the counselor's husband. The plan estimated start-up costs of between $34,000 and $39,500, and net income of more than $11,000 for the Danielses in the first year increasing to as much as $22,000 by the third year. However, the tax records for consultant's husband showed his operation, which had been in business for several years, had a net income of $7,472 in 1985. Ms. Daniels' husband, who had worked as a diesel mechanic for Anaconda Minerals Company in Butte, acknowledged that he had operated

8

a backhoe only occasionally and had never bid on an excavation job.

A University of Montana business and economic analyst considered the plan on behalf of the insurer. He testified by deposition that the data used in the plan were not the most recent and that the construction industry had since declined. He further noted that already there are some thirty backhoe businesses in the Flathead Valley and also that the Danielses' plan made no provisions for either labor costs or depreciation.

The court denied a lump sum on this evidence reasoning that the plan was too speculative and Ms. Daniels' role too tangential to justify risking a substantial portion of her benefits. The Workers' Compensation Court is in a much better position than are we to acquaint itself with the needs of the claimant and to rule accordingly. Where the evidence does not clearly preponderate against its decision, we will not reverse it. Krause, 641 P.2d at 461. The claimant has the burden to prove that her business proposal has a reasonable chance of succeeding. Bundtrock, 647 P.2d at 858. The record before us does not show such evidence. We hold that the Workers' Compensation Court properly exercised its discretion.

Was the refusal to provide as much as $100,000 in a lump sum for housing an abuse of discretion?

The Workers' Compensation Court may award lump sums for purchase of housing if, considering the claimant's age and health, such an award would be in her best interests. Belton, 714 P.2d at 150; Polich v. Whalen's O.K. Tire Warehouse (Mont. 1981), 634 P.2d 1162, 1165, 38 St.Rep. 1572, 1575, aff'd on remand, (1983), 203 Mont. 280, 661 P.2d 38; Garmann v. E.R. Feggert Co. (Mont. 1987), 736 P.2d 123, 125,

9

44 St.Rep. 781, 784. The court noted Dr. Johnson's testimony about claimant's housing needs:

> 38. Dr. Johnson testified that claimant needs to live "in a place where the roads will be reasonably accessible in all weather circumstances so that she (claimant) or ambulance personnel can get her the treatment she needs if she's in a desperate situation." . . . However, Dr. Johnson does not want claimant to be exposed to the city on a daily basis and prefers claimant live in a rural surrounding . . . Claimant should also have telephone access to medical assistance . . .

The court had no evidence as to the cost of appropriate housing. The claimant's real estate broker testified about four specific properties that fit the claimant's needs but also were properties large enough to run the excavation business and store the backhoe and equipment. These prices ranged from $89,500 to $105,000. The witness had no idea what appropriate housing without the business aspects might cost except to say it "probably" would cost at least $75,000. It is the claimant's burden to introduce evidence substantial enough to justify a lump sum. Belton, 714 P.2d at 150; Garmann, 736 P.2d at 125. The Workers' Compensation Court concluded that there was insufficient evidence to justify a lump sum award for the backhoe excavation business; it also concluded that claimant's evidence included costs for a house large enough to operate the backhoe excavation business. Despite the extremely pressing nature of Ms. Daniels' condition it had no evidence on which to base a lump sum for appropriate housing. To award the $100,000 would be to waste some portion of Ms. Daniels' rightful benefits. The denial of a lump sum for housing, considering the nature of the evidence and the court's invitation to reconsider the

10

request on more appropriate evidence, is not an abuse of discretion.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

11