Kyong S. THOMAS, Appellant,

v.

CUSTER STATE HOSPITAL, and State of South Dakota, Appellees.

No. 18298.

Supreme Court of South Dakota.

Argued Nov. 29, 1993.

Decided Jan. 26, 1994.

ing Thomas a cash advance on a lump sum worker's compensation award. We affirm.

## FACTS

The facts basic to this appeal are undisputed. Thomas was employed by Custer State Hospital when she sustained a back injury while lifting a patient. As a result, she was found to be totally and permanently disabled, and entitled to compensation at the rate of $136.00 per week, for life. As of July 1, 1992, the present value of Thomas' future permanent total disability benefits was $124,173.00 after application of the proper discount factor.

Thomas petitioned the Department of Labor (Department) requesting a lump sum distribution of the weekly benefits. She owed approved attorney's fees, costs, and taxes totalling $46,350.81. Thus, the net lump sum worker's compensation benefit would amount to $77,882.19. Of that net lump sum, however, Thomas requested a cash advance of $17,822.19, the intended purpose being personal travel and related expenses for Thomas and her family[1] to visit Korea, her country of origin to see her mother and other family members.

The Department was presented with two lump sum plans by Thomas, both providing for the requested cash advance, and investing the remaining $60,000. Under the first proposal, $60,000 would be invested in a twenty year certain plus life guarantee annuity,[2] providing a monthly annuity payment of approximately $368.41. Thomas' second proposal was to invest the $60,000 in an irrevocable trust with spendthrift provisions. This method of investment would result in tax consequences to Thomas, and would provide a monthly payment of approximately $343.22.[3] The State proposed to self-fund an annuity, investing $77,822.19 in a twenty year

Wm. Jason Groves and Michael L. Buffington of Groves Law Offices, Rapid City, for appellant.

Robert B. Anderson, May, Adam, Gerdes & Thompson, Pierre, for appellee.

WUEST, Justice.

Kyong S. Thomas (Thomas) appeals from the circuit court's judgment reversing a part of the Department of Labor decision award-

---

1. Those travelling to Korea would include Thomas, her husband, their two children, and two unrelated foster children who had been in her home since February 1992. The entire amount would be expended on travel to and from Korea, subsistence while in Korea, plus payment of past debts and normal monthly debts incurred at home.

2. This type of annuity guarantees that the payments would be made to Thomas for life; or to her estate for 20 years.

3. Although the trust would preserve the principal to Thomas and her survivors, the trust would also be subject to fees and expenses of the administrator, as well as the tax consequences to Thomas.

certain plus life guarantee annuity, which would provide monthly annuity payments to Thomas of approximately $477.85.

The Department found that Thomas did not have any other resources for a trip to Korea, and that "it would put [Thomas'] mind at ease" to be able to visit her family. The Department also found that the self-funded annuity to be provided by the State and funded with the entire $77,822.19 "would best maximize a continuous stream of disposable income" for Thomas and would provide "greater security to [Thomas] for future benefit payments." The Department stated that "From the financial aspect, State's proposal is the plan that best protects this claimant's future." However, the Department found that consideration of Thomas' "emotional well-being is also of significant importance." Based on this consideration, the Department ordered the lump sum distribution, and allowed the cash advance of $17,822.19 to Thomas for the Korea travel, leaving $60,-000.00 for the self-funded annuity provided by the State, and $46,350.81 for payment of Thomas' attorney fees.

From the Department's order, the State appealed to the circuit court. In its findings of fact, the court noted that granting Thomas' request for the cash advance would reduce her monthly stream of income by approximately $109.00 per month.[4] The court also found that, "In order to live, Thomas and her family spend basically everything she and her husband make in terms of income. The cash advance which she sought in order to fund the family trip to Korea was approximately equal to one year's family income." Additionally, the court found that the cash advance request was not reasonable under the circumstances; that it was inconsistent with and not in Thomas' best interest since the entire amount "would be spent on non-income producing assets and investments, and would have the effect of reducing

the future stream of income available to the claimant from any lump summing of benefits to which she is entitled." Therefore, the court concluded that while a lump sum distribution of Thomas' permanent total disability benefits was in her best interests, that distribution should be allocated to payment of attorney's fees and the remaining $77,822.19 to the self-funded annuity provided by the State. Specifically, the court's conclusions of law stated in part that:

7. [Thomas'] request for a cash disbursement of $17,822.19 does not meet the purpose of the South Dakota Worker's Compensation Act, and in particular does not furnish a fund payable in installments, similar to, and in lieu of, the weekly pay check and recompense in part for the loss of earnings of the wage earner to the greatest extent possible.

8. Granting [Thomas'] request for the $17,822.19 disbursement would allow too easy access to future benefits and would subvert the purpose of the South Dakota worker's compensation system.

9. The purpose of the South Dakota Worker's Compensation Act is not furthered by providing cash advances for personal travel such as the request made by claimant in this case.

\* \* \* \* \* \*

12. The conclusion of the Department of Labor that it was in [Thomas'] best interest to award $17,822.19 in cash to fund [the] planned trip to Korea ... was erroneous and constituted an error of law.

Thus, the circuit court reversed the Department's award of the cash advance to Thomas. It is from this decision that Thomas appeals.

### STANDARD OF REVIEW

The standard of review is governed by SDCL 1-26-36[5] and -37. *In re North-*

---

4. We note that utilization of the annuity program proposed by Thomas would reduce the monthly annuity payment by approximately 23% when compared to the annuity proposed by the State.

5. SDCL 1-26-36 provides:
 The court shall give great weight to the findings made and inferences drawn by an agency on questions of fact. The court may affirm the

decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
 (1) In violation of constitutional or statutory provisions;

*western Bell Tel. Co.*, 382 N.W.2d 413, 415–16 (S.D.1986); *Caldwell v. John Morrell & Co.*, 489 N.W.2d 353, 357 (S.D.1992). Under SDCL 1–26–36, a question of law—like that presented in the present case—is fully reviewable, with no deference given to the agency's conclusions of law. *Caldwell*, 489 N.W.2d at 357; *Permann v. Dep't of Labor, Unemp. Ins. Div.*, 411 N.W.2d 113, 117 (S.D. 1987). "[I]t is well within our province to interpret statutes without any assistance from the administrative agency." *Permann*, 411 N.W.2d at 117. We make the same review of the administrative agency's decision as did the circuit court, unaided by any presumption that the circuit court's decision was correct. *In re Templeton*, 403 N.W.2d 398, 399 (S.D.1987) (citing *Northwestern Bell*, 382 N.W.2d at 415–16; *Raml v. Jenkins Methodist Home*, 381 N.W.2d 241, 242–43 (S.D.1986)).

### DISCUSSION

DO THE "BEST INTERESTS OF THE EMPLOYEE" ALLOW CONSIDERATION OF THE CLAIMANT'S PURELY PERSONAL INTERESTS WHEN CONSIDERING A REQUEST FOR A CASH ADVANCE AS PART OF A LUMP SUM DISTRIBUTION UNDER SDCL 62–7–6?

 It is the public policy of this state that worker's compensation statutes be liberally construed in favor of injured employees, and to effectuate the purpose of the workers' compensation system. *Wilcox v. City of Winner*, 446 N.W.2d 772, 775 (S.D. 1989) (citations omitted); *Mills v. Spink Elec. Coop.*, 442 N.W.2d 243, 246 (S.D.1989) (citations omitted); *Schwan v. Premack*, 70 S.D. 371, 374, 17 N.W.2d 911, 912 (1945). The overall purpose of the worker's compensation act is to compensate an employee and dependents for the loss of income-earning

(2) In excess of the statutory authority of the agency;
(3) Made upon unlawful procedure;
(4) Affected by other error of law;
(5) Clearly erroneous in light of the entire evidence in the Record; or
(6) Arbitrary and capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

ability where the loss is caused by injury, disability or death due to an employment-related accident, casualty or disease. *Caldwell*, 489 N.W.2d at 362. When compensation is made in lieu of a pay check, such payment on an installment basis allows less chance that the funds could be lost through "unwise investments" or "squandering" of the money. *See generally Wulff v. Swanson*, 69 S.D. 539, 543, 12 N.W.2d 553, 554–55 (1944).

We have previously considered the propriety of a lump-sum payment, noting that:

It may be stated generally that the allowance of a lump-sum award is the exception and not the general rule. We believe, as a matter of public policy, that the welfare of the [claimant and any dependents] is *best served by the payment of the compensation in regular fixed installments* as wages are paid [.]

*Wulff*, 69 S.D. at 543, 12 N.W.2d at 555 (emphasis added) (citations omitted). Noting that the excessive use of lump-sum payments undermines the "real purposes of the compensation system," Professor Larson likewise states in his treatise that, "Since compensation is a segment of a total income insurance system, it ordinarily does its share of the job only if it can be depended on to supply periodic income benefits replacing a portion of lost earnings." 3 Arthur Larson, The Law of Workmen's Compensation § 82.71, at 15–1243 (1993) [hereinafter Larson, Workmen's Compensation].

SDCL 62–7–6 allows for a lump sum distribution of workers' compensation benefits under certain circumstances. The statute provides in pertinent part:

An employer or employee who desires to have any unpaid compensation paid in a lump sum may petition the department of labor asking that the compensation be paid in that manner. If, upon proper notice to

A court shall enter its own findings of fact and conclusions of law or may affirm the findings and conclusions entered by the agency as part of its judgment. The circuit court may award costs in the amount and manner specified in chapter 15–17.

interested parties and proper showing before the department, it appears in the *best interests of the employee* that the compensation be paid in a lump sum, the secretary of labor may order the commutation of the compensation to an equivalent lump-sum amount. ... If there is an admission or adjudication of permanent total disability, the secretary may order payment of all or part of the unpaid compensation in a lump sum under the following circumstances:

(1) If the employee has *exceptional financial need* that arose as a result of reduced income due to the injury; or

(2) If necessary to pay the attorney's fees, costs and expenses approved by the department under § 62-7-36.

SDCL 62-7-6 (emphasis added).[6]

■ Professor Larson notes that, "The beginning point of any consideration of the justifiability of lump-summing in a particular case is the standard set by the statute." 3 LARSON, WORKMEN'S COMPENSATION, § 82.-72(a), at 15-1245. Our statute authorizing a lump-sum payment clearly sets out the circumstances under which such a payment can be made. First, it must be in the "best interests of the employee." Our prior decisions confirm that the primary emphasis must be placed on providing an injured worker with a reliable stream of income to replace lost wages and benefits. *See Caldwell*, 489 N.W.2d 353; *and Wulff*, 69 S.D. 539, 12 N.W.2d 553. Second, in the case of a worker who has been permanently and totally disabled (like Thomas), a lump sum may be ordered if the worker has an "exceptional financial need that arose as a result of reduced income due to the injury." SDCL 62-7-6(1). Third, a lump sum may be ordered, in the case of a permanent total disability, when necessary to pay the attorney's fees, costs and expenses. SDCL 62-7-6(2); SDCL 62-7-36.

■ In Thomas' case, a lump sum order was appropriate and necessary to pay her attorney's fees, costs, and taxes of $46,350.81. As the circuit court held, such a disbursement is in Thomas' best interest to pay her

just and due debt. After such a disbursement, it is in accordance with the purposes of the workers' compensation act and Thomas' best interests to utilize the remainder of the lump sum in such a way that will maximize future wage replacement via a reliable mechanism such as the annuity proposed by the State. Consideration of Thomas' purely personal desire to visit her family is not within the statutory directives; nor may we consider her financial inability to take this trip absent a cash advance. Thomas' lack of funds to travel to Korea is not an "exceptional financial need" that arose *because of* her work-related injury. *See* SDCL 62-7-6(1).

Few courts have set out specific factors to be utilized in the analysis of an employee's best interest. Thomas urges reliance on factors set out in a decision of the Iowa Supreme Court. *Dameron v. Neumann Bros.*, 339 N.W.2d 160, 164 (Iowa 1983). In *Dameron*, the court listed four factors to be analyzed when considering whether a worker should receive lump sum compensation:

1. The worker's age, education, mental and physical condition, and actual life expectancy (as contrasted with information provided by actuarial tables).

2. The worker's family circumstances, living arrangements, and responsibilities to dependents.

3. The worker's financial condition, including all sources of income, debts and living expenses.

4. The reasonableness of the worker's plan for investing the lump sum proceeds and the worker's ability to manage invested funds or arrangement for management by others (for example, by a trustee or conservator).

*Id.* In fact, examination of these factors supports our view that the focus of an employee's best interest must have a primarily financial perspective geared toward wage replacement. Likewise, decisions from our neighboring state of Montana, when considering lump sum payments under a statute that authorizes such payments when in the employee's best interest, allows lump sum

---

**6.** SDCL 62-7-36 states in part that, "Attorneys' fees and costs may be paid in a lump sum on the present value of the settlement or adjudicated amount."

payments to clear a claimant's past debts or to satisfy "pressing needs." *Daniels v. Kalispell Regional Hosp.*, 230 Mont. 407, 750 P.2d 455, 458 (1988) (citations omitted).

We note that the Department, in allowing the cash advance to Thomas' for the Korea travel, stated that this would put Thomas' "mind at ease" and that "the consideration of [Thomas'] emotional well-being is also of significant importance." We reject these statements as appropriate considerations when viewing lump-sum award proposals, or requests for cash advances under such proposals. Examination of a case cited by Thomas to urge consideration of "peace of mind" supports our conclusion. *Prigosin v. Indus. Comm'n*, 113 Ariz. 87, 90, 546 P.2d 823, 826 (1976). In *Prigosin*, the Arizona Supreme Court states that while peace of mind "could be considered as a factor," it further notes that this is "not the vital factor." *Id.* "Were peace of mind the vital factor, it would dictate [lump sum awards] in almost every instance." *Id.* We agree, and refuse to start down that road.

In summary, the purpose of the workers' compensation act directs that any awards of lump sum payments must be made in accordance with the goal of preserving future wage replacement benefits. The Department's award of a cash advance to satisfy Thomas' personal desire to visit her family in Korea subverts the intention of workers' compensation, and the circuit court properly reversed that award.

The judgment is affirmed.

MILLER, C.J., and SABERS and AMUNDSON, JJ., concur.

HENDERSON, J., concurs specially.

HENDERSON, Justice (specially concurring).

SDCL 62–7–6 provides statutory guidance for a lump-sum distribution or computation of unpaid weekly compensation benefits which may be awarded. In fact, it is the only statutory guidance.

A simple criteria is expressed therein, namely what is *"in the best interests of the employee?"* (Emphasis supplied mine.) Although I generally agree with the legal rationale and result in this case, due to the request for a cash advance for travel, it strikes me that the majority opinion is vented toward a financial analysis. For example, can it be said the "best interests of the employee" are, as the majority expresses, that "... lump sum payments *must be made in accordance with the goal of preserving future wage replacement benefits?"* (Emphasis supplied mine.) If life were all a mechanical application of cold facts and theory, I could agree. But life is not that way. Notice the words of the statute underlined above; then compare it with the holding (also underlined above). Quite different. "Best interests of the employee" has to mean more than "preserving future wage replacement."

Based upon the words "in the best interests of the employee" as SDCL 62–7–6 states, there has to be some discretion within the award of a lump sum distribution. Therefore, this Court should adopt the abuse of discretion test under the terms of the statute. By extension of reason, the scope of review should be: Was the lump sum award and the distribution thereof an abuse of discretion? It would not be unreasonable to consider the needs of the employee. In fact, the needs of the employee should prevail. Essentially, both financial and personal considerations should be considered. This would include the disabled worker's family circumstances, living arrangements, and responsibilities to his or her dependents. *Dameron v. Neumann Bros., Inc.*, 339 N.W.2d 160 (Iowa 1983). *See also Diamond v. Parsons Company*, 129 N.W.2d 608 (Iowa 1964). Other than these considerations, Iowa's highest court has adopted three additional factors in determining the best interests of the claimant: (1) The worker's age, education, mental and physical condition, and actual life expectancy (as contrasted with information provided by actuarial tables); (2) The worker's financial condition, including all sources of income, debts and living expenses; and (3) The reasonableness of the worker's plan for reinvesting the lump sum proceeds and the worker's ability to manage invested funds or arrange for management by others. The latter could be, as an example, by a trustee or conservator. Certainly, the De-

partment of Labor and the court system owe a duty to help the disabled worker to the extent that a lump sum settlement is not spent foolishly or wasted so that the settlement fails to provide the wage-substitute intended by the worker's compensation law.

As I understand the facts, this disabled worker wants to take her entire family to Korea because her mother is over 80 years of age and not in good health. Mrs. Thomas fears that her mother will pass away without ever seeing her or the grandchildren. Thomas' extended family, consisting of her mother, two brothers, sister, and their families live in Korea. Thomas wants to take her husband, two foster children (who resided in her home for five months) and her two biologic children to Korea for a visit. Broken down, this would be: $5,500 airfare for the family; $2,770 airfare for the foster children; $4,000 living expense while in Korea; $1,800 rent on her home in Rapid City, South Dakota; $1,350 to pay various monthly payments while in Korea; $1,000 for insurance on home and automobiles; $1,000 to pay off a bad debt (an unscheduled pre-bankruptcy debt) and $500 to pay for a cordless telephone. Custer State Hospital did not appeal from the last two advances and Judge Zinter permitted these payments.

The requested cash advances approximate one year's family income for the Thomas family. So, this is a costly visit. All of the monthly family expenses were itemized by the trial court and I shall not bore the reader with all of these items. Needless to say, it is very obvious that the Thomas family could not have afforded the trip without the cash advance. In my opinion, Judge Zinter did not abuse his discretion because Mrs. Thomas simply went too far in asking for travel and expenses to Korea of $17,822.19. An abuse of discretion refers to a discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence. *Cody v. Edward D. Jones,* 502 N.W.2d 558 (S.D.1993); *Herndon v. Herndon,* 305 N.W.2d 917 (S.D.1981). Such discretion occurs only if no "judicial mind in view of the law and the circumstances of the particular case, could reasonably have reached such a conclusion." *Jensen v. Weyrens,* 474 N.W.2d

261 (S.D.1991); *Matter of Estate of Pejsa,* 459 N.W.2d 243 (S.D.1990). When you consider the total award, the trip gobbles up a great part of it. In my opinion, the request was excessive; it would take too much money away from the corpus of the settlement. Certainly, the Department of Labor and the circuit court owe a duty to preserve the principal so that this Korean national, who now lives in our country, will not become a charge to the people of this state.

Under the majority opinion, a "peace of mind factor" could be considered (inferentially, in future decisions by this Court) but should not be a vital factor as our Brothers in Arizona decided. *See Prigosin v. Industrial Commission,* 113 Ariz. 87, 546 P.2d 823 (1976). I agree. But I do not, for one moment, agree that the "emotional well-being" of a disabled worker should be "rejected" as the majority opinion holds. Nor would I shunt aside the circumstance, mandated by SDCL 62–7–6(1) of "exceptional financial need." The majority opinion is too restrictive. Compare *Polich v. Whalen's O.K. Tire Warehouse,* 194 Mont. 167, 634 P.2d 1162 (1981), wherein the Supreme Court of Montana converted a disabled worker's installment payments to a lump-sum which permitted the disabled worker to move to a more hospitable climate. Compare also *D & M Contractors, Inc. v. Forlano,* 283 A.2d 843 (Del.Super.1971), wherein the Superior Court of Delaware permitted an award from the weekly benefits so as the disabled worker could return to his home country of Argentina. Factual scenarios could arise in the future which would cry out for a cash award, from the lump-sum settlement, but the language of our decision today boxes in disabled workers who need immediate help.

From the earliest times in jurisprudence, it is obvious that appellate tribunals have been empowered to reverse for errors of law *and to announce the rules which are to be applied in the future.* By doing so, we on the appellate level hopefully ensure predictable uniformity in the rules applied by the lower courts. Additionally, within that framework of thought, the appellate court should seek justice in the individual case. As I review the majority opinion, in casting aside sister

states' *objective* (or positive) standards, our Court develops none of its own. Perhaps we have done justice in the case, but what rules have we announced to be applied in the future? Unable to outright concur in the *STANDARD OF REVIEW* (pabulum) which anchors upon immaterial citations, I specially concur. As the years roll by, *Thomas* will be a citational arrow in the insurers' quiver to retain the funds.