Michael A. CALDWELL, Claimant and Appellant,

v.

JOHN MORRELL & COMPANY, Employer/Self–Insurer and Appellee,

and

Safety Kleen Corporation, Employer and Appellee,

and

National Union Fire Insurance Company, Insurer and Appellee.

Nos. 17686, 17688.

Supreme Court of South Dakota.

Argued Feb. 10, 1992.

Decided July 22, 1992.

R. Alan Peterson of Lynn, Jackson, Shultz & Lebrun, Sioux Falls, for claimant and appellant.

Michael S. McKnight of Boyce, Murphy, McDowell & Greenfield, Sioux Falls, for employer/self-insurer and appellee John Morrell & Co.

Michael L. Luce of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for employer

and insurer and appellees Safety Kleen Corp. and National Union Fire Ins. Co.

JOHNS, Circuit Judge.

This is a worker's compensation appeal. The matter was heard by the Department of Labor, Division of Labor and Management (Department) on August 2, 1990. On November 21, 1990, the Department entered its findings of fact, conclusions of law, and order. John Morrell and Company (Morrell) filed a notice of appeal to circuit court on December 5, 1990. Safety Kleen Corporation (Safety Kleen) and its insurer, National Union Fire Insurance Company, filed their notice of appeal on December 6, 1990. (Hereinafter, Morrell, Safety Kleen and National Union will collectively be known as Employers). On or about December 7, 1990, a notice of review was filed by Michael A. Caldwell (Employee). Circuit court then entered its findings, conclusions, and judgment on July 30, 1991. From that decision, Employee filed a notice of appeal with this court on September 23, 1991, and Employers filed a joint notice of review on October 1, 1991.

We affirm in part, reverse in part, and remand.

## FACTS

At the time of his hearing, Employee was a 39–year–old laborer who was a long-time employee of Morrell. In May of 1987, Employee went out on strike against Morrell. While on strike he obtained employment with Safety Kleen. In November of 1988, the strike ended and Employee returned to work at Morrell but he also continued his work at Safety Kleen until a replacement worker could be found for his position. Employee worked at both of these jobs on a full-time basis (30 to 40 hours a week at Safety Kleen and 45 to 60 hours a week at Morrell) until his back injury on January 14, 1989.

Prior to November 1988, Employee had no unusual back problems; and prior to January 14, 1989, he incurred no identifiable event in either employment which caused any unusual pain or discomfort. However, sometime in December 1988, Employee began to gradually experience soreness in his back with occasional tingling and numbness in his legs.

Employee completed his last shift at Morrell without incident on January 12, 1989. On January 13, 1989, Employee reported to work at Safety Kleen but did not work because of back pain. Employee sought chiropractic care and laid on a heating pad the remainder of that day. While at home on the night of January 14th or the early morning hours of January 15th, Employee awoke, walked a few steps and then collapsed, unable to move. Employee subsequently underwent surgery for a herniated disk.

Employee was totally incapacitated from January 15, 1989, until May 1, 1989. On May 1st he returned to full-time light duty work at Morrell. He did not return to work at Safety Kleen. On January 24, 1990, Employee was given a 15 percent medical impairment rating by his treating physician.

Department found that Employee's injury and subsequent disability arose out of and in the course of his joint employment with Employers and, thus, concluded that both were jointly and severally liable for worker's compensation benefits. Department awarded Employee temporary total disability benefits, temporary partial disability benefits, and permanent partial disability benefits. The latter were based on a 40 percent loss of use disability rating rather than the 15 percent medical anatomical impairment rating testified to by Employee's treating physician. In calculating the weekly rate basis for each of the benefits, Department used Employee's income from both jobs.

## ISSUES

Employee raises the following issues:

1. Are earnings from a temporary job to be considered in calculating worker's compensation benefits for a temporary partial disability pursuant to SDCL 62–4–5? The Department held in the affirmative and circuit court held in the negative.

2. Are wage concessions under a collective bargaining agreement occurring after an injury to be considered in calculating worker's compensation benefits for a temporary partial disability pursuant to SDCL 62–4–5? The Department held in the negative and circuit court held in the affirmative.

3. Are earnings from a temporary job to be considered as a measure of lost earning capacity in calculating worker's compensation benefits for a permanent partial disability pursuant to SDCL 62–4–6? The Department held in the affirmative and circuit court held in the negative.

Employers, by their notice of review, raise the following issues:

4. Did Employee meet his burden of proof that his back injury arose out of his employment? Circuit court affirmed Department's conclusion that he did.

5. Did the Department err in refusing to consider evidence that Employee received sick leave benefits from Morrell? Circuit court held that the Department's exclusion of this evidence was correct.

6. Did Employee meet his burden of proof that he was entitled to permanent partial disability benefits based upon a rating of 40 percent when there is no expert testimony to support a rating over 15 percent? Circuit court remanded this issue to the Department with instructions that Department not consider Employee's temporary job with Safety Kleen. Circuit court, however, refused to hold that Employee had not established his entitlement to permanent partial disability benefits beyond the 15 percent rating given by Employee's treating physician. Circuit court also refused to hold that expert testimony was necessary to support a rating which is greater than a per-

son's medical anatomical impairment rating.

## STANDARDS OF REVIEW

 When an appeal of an administrative agency's decision in a contested matter is taken to circuit court and the final judgment of that court is appealed to this court, we must make the same review of the agency's actions as did the circuit court. *Lee v. South Dakota Dept. of Health,* 411 N.W.2d 108 (S.D.1987); *Barkdull v. Homestake Min. Co.,* 411 N.W.2d 408 (S.D.1987) (*Barkdull II*); *Hanson v. Penrod Const. Co.,* 425 N.W.2d 396 (S.D.1988). The circuit court's review and our review of the agency's actions are controlled by SDCL 1–26–36. Under this statute our standard of review will vary depending on whether the issue is one of fact or one of law. When the issue is a question of fact, then the actions of the agency are judged by the clearly erroneous standard; and when the issue is a question of law, then the actions of the agency are fully reviewable. *Permann v. Dept. of Labor, Unemp. Ins. D.,* 411 N.W.2d 113 (S.D.1987); *Egemo v. Flores,* 470 N.W.2d 817 (S.D.1991). However, when evidence on an issue of fact is submitted to the agency *entirely* by deposition, then our review of that evidence is unhampered by the clearly erroneous rule. *Lien v. Miracle Span Corp.,* 456 N.W.2d 563 (S.D.1990); *Application of Northwestern Bell Tel. Co.,* 382 N.W.2d 413 (S.D. 1986); *Harden v. South Dakota Credit Union League, Inc.,* 87 S.D. 433, 209 N.W.2d 665 (1973). This means that we will decide for ourselves the credibility of the deponents and the weight and value to be attached to their testimony.

## ANALYSIS

### 1. *Causation.*

 Before an employee can collect benefits under our worker's compensation statutes, he must establish, among other things, that there is a causal connection between his injury and his employment.[1]

---

1. *See,* SDCL 62–1–1(2) which limits a compensable injury to one "arising out of and in the course of employment" and *Krier v. Dick's Linoleum Shop,* 78 S.D. 116, 98 N.W.2d 486 (1959)

*Sudrla v. Commercial Asphalt and Materials,* 465 N.W.2d 620 (S.D.1991); *Roberts v. Stell,* 367 N.W.2d 198 (S.D.1985); *Kirnan v. Dakota Midland Hosp.,* 331 N.W.2d 72 (S.D.1983). That is, the injury must have "its origin in the hazard to which the employment exposed the employee while doing his work." *Sudrla, supra* at 621 *quoting Deuschle v. Bak Const. Co.,* 443 N.W.2d 5 (S.D.1989). This causation requirement does not mean that the employee must prove that his employment was the proximate, direct, or sole cause of his injury; rather, the employee must show that his employment was *"a contributing factor"* to his injury. *Sudrla, supra* at 621; *King v. Johnson Bros. Construction Company et al.,* 83 S.D. 69, 155 N.W.2d 183 (1967).

■ The employee's burden of persuasion is by a preponderance of the evidence. In *Mehlum v. Nunda Cooperative Ass'n.,* 74 S.D. 545, 546, 56 N.W.2d 282 (1953), we clearly stated that "(t)he burden of proof rested upon claimant to prove by a preponderance of the evidence the facts necessary to establish a right to compensation." Later, in *King, supra,* 83 S.D. at 74, 155 N.W.2d at 186, we said that the employee's burden "is not sustained when the probabilities are equal." Finally, in *Wold v. Meilman Food Industries,* 269 N.W.2d 112, 116 (S.D.1978), we cited *Holmes v. Bruce Motor Freight, Inc.,* 215 N.W.2d 296 (Ia.1974) for the proposition that "the claimant has the burden of proving by a preponderance of evidence that some employment incident or activity brought about the disability on which the worker's compensation claim is based; a possibility is insufficient and a probability is necessary." *See also, Deuschle v. Bak, supra.*

■ Department found that Employee suffered a single "indivisible" injury through his employment with Employers and, thus, concluded that Employers were jointly and severally liable. Employers have not challenged Department's joint and several liability conclusion. They only contend that Employee has failed to establish by a preponderance of the evidence that his

back injury is causally related to his employment with them. Both sides have offered evidence on this question by way of the depositions of their medical experts; Drs. Cass and Entwistle. We have conducted a de novo review of the depositions and are of the view that Employee has met his burden of persuasion. We, therefore, affirm both the Department and circuit court on this issue.

Employee is permanently and partially disabled due to degenerative changes to his spine which culminated in the herniation of and subsequent fusion of one of his disks. His theory is that this condition occurred, at least in part, because of the daily activities he engaged in for Employers. Specifically, he contends that he experienced wear and tear to his back from lifting heavy objects, pushing and pulling heavy carts, and the general nature of the manual labor he performed. He has neither alleged nor shown that his back condition is due to any particular identifiable event at either job.

This Court has previously recognized in other cases that an employee does not have to have an accident or experience any trauma to his person before a medical condition will qualify as a compensable injury. It is sufficient that the disability "was brought on by strain or overexertion incident to the employment, though the exertion or strain need not be unusual or other than that occurring in the normal course of employment." *Sudrla, supra,* 465 N.W.2d at 621. Thus, the issue in this case is whether Employee's back condition was caused by the strain of the manual labor he performed for Employers. In this respect, Employee does not have to show that the strain of his employment was the sole or even a major reason for his medical condition; he must only show that it was a contributing factor.

Dr. Frederick Entwistle, a rehabilitation physician, testified for Employers. Although he was not Employee's treating physician, he did review Employee's medical records. He testified that a back disk can herniate because of a congenital weak-

which interpreted the phrases "arising out of" and "in the course of".

ness, a weakness caused by the stress of daily activities, or by a trauma to that portion of the back. He also testified that, based on Employee's medical history and the physical findings of Employee's treating physicians, he was unable to state to a reasonable medical probability that the disk herniation was caused by Employee's employment as opposed to the other normal activities of life. Finally, while he did recognize that the stress and strain of Employee's employment with Employers was a possible cause, he would not say that it was a probable cause in light of the fact that Employee was unable to point to any specific incident of trauma to the back.

Dr. Joseph Cass, an orthopedic surgeon and one of Caldwell's treating physicians, testified for Employee. While he agreed with Dr. Entwistle on the various reasons why a disk may herniate, he disagreed that the reason for Employee's herniation was speculative. He opined to a reasonable medical probability, based on the medical history that Employee had related to his physicians, that Employee's herniated disk arose out of his employment with Employers. He held this opinion even though he was unable to determine to any reasonable degree of medical certainty which of the two jobs would have been the cause.

We find Dr. Cass' opinion to be the more persuasive for the following reasons: 1) Employee's employment with both employers involved heavy manual labor, which would place a daily strain on one's back; 2) Prior to his resuming his employment with Morrell in November of 1988, Employee had no abnormal or unusual problems with his back; 3) Prior to the date Employee's disk herniated, January 14, 1989, he had not experienced any specific incident at his employments which would have caused his herniation. Therefore, we conclude that the activities Employee performed for both Employers were a contributing cause of his injury.

2. *Offer of proof—sick leave benefits.*

■ Morrell attempted to present evidence at the time of the departmental hearing that Employee had applied for and received sick leave benefits following his back injury. The Department ruled that such evidence was inadmissible under the holding in *Middleton v. City of Watertown,* 70 S.D. 158, 16 N.W.2d 39 (1944). Morrell then made an offer of proof that: 1) During the time Employee was totally and temporarily disabled, it paid him sick leave benefits; 2) When an employee at Morrell is paid sick leave benefits, they are not entitled to worker's compensation benefits and vice versa; 3) All employees at Morrell are aware that if they receive sick leave benefits they are not entitled to worker's compensation benefits and vice versa. Employers contend that Department should have considered this evidence for two reasons. One, that these monies should be credited on the worker's compensation payments Employee received while he was totally and temporarily disabled. And two, that the Department should have considered this evidence as an admission by Employee that he was aware that his injury did not arise out of either employment.

As noted above, Department held that *Middleton v. City of Watertown, supra,* precluded any consideration that Employers were entitled to a dollar-for-dollar credit for sick benefits received by Employee from Morrell. Circuit court affirmed Department citing *Meyers v. Meyers Oil Company,* 88 S.D. 166, 216 N.W.2d 820 (1984) and SDCL 62-3-18.

In *Middleton,* employee suffered an injury to his knees resulting in a temporary total disability. Employer and employee then executed a compensation agreement whereby employee received payments totaling $420.00 in settlement of his claim. Sometime after his settlement, employee made an additional claim for a permanent partial disability of one of his knees. Since employee received his regular wages from employer during his temporary total disability, employer's insurer claimed that the employee's permanent partial disability award should be reduced by the amount of the wages employee received during the earlier disability. This Court held that there was no evidence of an agreement that employer was to receive a credit on any future award and that, thus, the

amount of wages in excess of the first award amounted to a gratuity. The Court went on to hold that neither the employer nor its insurer could use gratuitous payments as a setoff against employer's statutory liability under the Workmen's Compensation Act.

In the instant case the payments made by Morrell would not, pursuant to its offer of proof, be a gratuity. Therefore, we conclude that our holding in *Middleton* would not preclude the admission of this evidence on the credit question.

In *Meyers, supra,* employee's father purchased a major medical policy which paid employee's medical bills. Employer's insurer contended that, since the bills were already paid, it should not have to pay employee for the same. We held, citing SDCL 62-3-18, that:

> (S)ince accident insurance is a matter of private contract, it would not affect the rights of injured employees to recover under compensation law. If a claimant chooses to pay the premium for personal insurance, the compensation carrier should not be the beneficiary of claimant's personal policy in the event of injury. [citations omitted].

216 N.W.2d at 821.

*Meyers* is distinguishable from the evidence proffered in the instant case. In *Meyers* the benefits received by employee were from a source collateral to the employer whereas the benefits in question were not. Thus, that decision does not provide support for Department's ruling.

SDCL 62-3-18 provides that:

> No contract or agreement, express or implied, no rule, regulation or other device, shall in any manner operate to relieve any employer in whole or in part of any obligation created by this title except as herein provided.

Circuit court reasoned that the language of this statute clearly prohibits Employers from relieving themselves of their obligation to pay worker's compensation benefits by any agreement or otherwise. From this proposition it concluded that the proffered evidence was void as against public policy.

We recognize that this statute is very broad in its terms and effects. However, we are of the opinion that our legislature never intended to allow an employee to collect double benefits when a self-insured employer makes it clear that the employee is not entitled to do so. The purpose of this statute is to ensure that an employer does not, because of ruse, artifice, inequality of bargaining power, or by other means, cheat any employee out of either coverage or those benefits an employee would be entitled to under our worker's compensation act. Employers are not trying to cheat Employee out of his coverage or any of the benefits to which he is entitled. They are only asking that no employee receive a windfall at their expense when the employee is made aware of the type of facts set forth in Morrell's offer.

Furthermore, by holding that Morrell's proffered evidence should be considered, we are of the opinion that our action does not contravene the public policy expressed by our legislature; rather, we foster public policy. Employee collected sick leave benefits in this case because Employers denied any coverage under worker's compensation. If Morrell would not have paid Employee sick benefits, he would not have received any type of monetary compensation to replace his lost wages during the time he was totally and temporarily incapacitated. If we were to agree with Employee, we would, in effect, be encouraging all employers to refuse to pay sick leave benefits any time that worker's compensation coverage is at issue. Such a result would most certainly not foster the public good.

Finally, we would note that Employers, under the language of SDCL 62-3-18, are not attempting to *relieve* themselves from any obligation created by Title 62 of the South Dakota Codified Laws (South Dakota's Worker's Compensation Law). SDCL 62-1-9. Rather, they are simply saying that if they are liable to Employee, then they should receive credit for the non-gratuitous payments Morrell made to him. In summary, Employers are not attempting to take any unfair advantage of Employee.

For the reasons stated we reverse both Department and circuit court on this issue. We remand this question with instructions that Department consider Morrell's offer. If the Department does allow this credit, then Employee may well be entitled, under his collective bargaining agreement, to be re-credited on his sick leave.

■ As to Morrell's tacit admission argument, circuit court held that, while it had technical merit, the record failed to reflect that Morrell ever asked Department to consider the evidence as an admission against interest. Although Morrell admits that it did not specifically ask the hearing examiner to consider the evidence as an admission, it argues that the significance of the evidence was obvious from the offer itself. We have reviewed the record and agree with circuit court's conclusions that Morrell failed to fully and adequately advise the hearing examiner of the factual relevancy of the evidence and that, therefore, Employers failed to properly preserve this issue for appeal. *Roach v. Snedigar,* 76 S.D. 63, 72 N.W.2d 427 (1955).

3. *Permanent partial disability—loss of use.*

Department determined that Employee was entitled to a 40 percent permanent partial disability rating based on the "loss of use" analysis recognized in *Cozine v. Midwest Coast Transport, Inc.,* 454 N.W.2d 548 (S.D.1990). Although Dr. Cass gave Employee a 15 percent medical impairment, Department also considered evidence of Employee's extensive loss of time necessary each day for treatment of his injury (40 percent), the fact that he spends his free time engaged in sedentary activities, his lost earning capacity of 35 percent as measured by the fact that he was no longer able to work at Safety Kleen, and his loss of strength (90 percent, measured by a functional capacity assessment).

Other than the testimony of Dr. Cass, no other medical doctor or any vocational expert testified on Employee's loss of employability or loss of use. Employers contended before the circuit court that expert testimony was necessary before Department can establish a loss of use disability rating. Circuit court rejected Employers' expert testimony argument but did remand the determination to Department with instructions that it not consider Employee's second job at Safety Kleen in assessing Employee's reduced earning capacity. Circuit court reasoned that it was inappropriate for the Department, in assessing Employee's true loss of his earning power, to consider the loss of a second job he never intended to perform. Employee appeals this remand and Employers have filed a notice of review on the expert testimony issue.

■ While we agree with circuit court that Department's determination should be remanded, we have a different reason for a remand. In deciding Employee's loss of use, Department considered, among other things, the time Employee spent each day for treatment of his injury and the fact that he spends his free time engaged in sedentary activities. These factors bear on his loss of enjoyment of life rather than his impaired ability to earn a living. In our opinion, Department has read our holding in *Cozine, supra,* in a far broader manner than we intended.

In *Cozine,* 454 N.W.2d at 551 and 552, we held that:

SDCL 62–4–6 specifies the amount of compensation an employee shall receive for the loss of a part of the body or its loss of use. The clear language of this statute directs that compensation shall be paid for loss of use. Consequently, the hearing examiner must determine if, and to what extent, a claimant has suffered the loss of use of a part of the body. This determination requires more than a mere adoption of a medical evaluation of anatomical impairment.

In speaking of the limited nature of a medical impairment rating we went on to quote from the American Medical Association, *Guide to the Evaluation of Permanent Impairment,* x (2d ed. 1984):

The physician who makes a determination about impairment must keep in mind that a permanent impairment rating is not the same as a disability rating. Per-

manent medical impairment is related directly to the health status of the individual, *whereas disability can be determined only within the context of the personal, social, or occupation demands,* or statutory or regulatory requirements *that the individual is unable to meet as a result of the impairment.*

*Id.* at 552. (emphasis added).

■■■ When we quoted the above emphasized language, we did so for illustration only and did not intend to say that an employee should be compensated under our act for any impairment of his personal/social life. Our holding in that case must be read in light of the overall purpose of our worker's compensation law. Our act is designed to compensate an employee or his family for the loss of his income-earning ability which loss is occasioned by an injury, disablement, or death because of an employment-related accident, casualty, or disease. The act guarantees employees compensation irrespective of tort law considerations and in return employees forego the right to a one hundred percent recovery. Employers, on the other hand, accept responsibility for injuries they might not otherwise be responsible for at common law and in return their liability is fixed and limited. *Stevenson v. Douros,* 58 S.D. 268, 235 N.W. 707 (1931). With the exception of certain items (such as medical, hospital, and burial expenses), SDCL Chapter 62–4 provides that compensation shall be paid pursuant to definite schedules. *See* SDCL 62–4–3, 4, 5, 6, 7, and 12 et seq. All of the schedules are based upon the employee's loss of wage-earning power; that is, what would the employee have expected to earn if he had not been victimized by an employment-related accident, casualty, or disease. *See* SDCL 62–4–24, 25, 26, 27, and 28. We hold that a disability rating due to a "loss of use" of a body member can, under the provisions of SDCL 62–4–6, only be considered in the context of what effect it would have on the employee's income-earning capability and that any effect it has on his personal or social life is not a relevant consideration.

Employers assert that our decision in *Cozine, supra,* implicitly requires expert testimony arguing that we "ruled that it was error for the Department to refuse to consider the testimony of Cozine's vocational expert and medical expert regarding her impairment." Employers' reading of what we said is selective. What we said was:

> The hearing examiner should have considered other evidence, *such as* the testimony of Cozine's vocational expert regarding loss of employability and the deposition testimony of Dr. Opheim that "any activity that would involve use of [Cozine's] right upper extremity she would be unable to do."

454 N.W.2d at 552 (emphasis added). The issue in that case was whether the Department erred in refusing to hear evidence on loss of use. We did not decide or consider whether a determination of loss of use requires expert testimony on the percentage of disability.

In the alternative, Safety Kleen argues that lay people do not have sufficient knowledge to assign percentages of permanent partial disability when the assignment is based on loss of use. It argues that, although this determination may not be exclusively within the province of medical experts, it nevertheless requires testimony of established experts familiar with disabilities and their effect on one's employment or loss of use.

■■■ Expert testimony is required when the subject matter at issue does not fall within the common experience and capability of a lay person to judge. *Podio v. American Colloid Company,* 83 S.D. 528, 162 N.W.2d 385 (1968). In such a case the testimony of an expert is necessary to assist the fact-finder in reaching a decision. While there may be cases where an expert's testimony on loss of use, over and above a medical impairment, may be only advisable rather than essential, we hold that as a general rule and under the facts of this case the testimony of a vocational expert (or some other like expert) is required before the Department can establish a disability rating. Although Department's hearing examiners may hear many cases,

we are not prepared to imbue them with any particular expertise when it comes to establishing a permanent partial disability rating based on an employee's loss of use of a body part. In our opinion the analysis required in all but a rare possible case is of sufficient complexity and is of such a nature that the trier of fact must be enlightened by an expert before a rational decision can be made. Ergo, we reverse circuit court on this issue.[2]

Given our holding on the expert witness issue, we prefer to leave for another day the question of what effect, if any, a disability may bear on a claimant's loss of employability because he can no longer work a second job of a temporary nature.

4. *Temporary partial disability benefits—temporary second job and wage collective bargaining agreement.*

■ Employee was totally incapacitated until May 1, 1989, at which time he returned to work at Morrell's, doing his present light duty work. It was not until January 24, 1990, that he received a disability rating from Dr. Cass. Department awarded him temporary partial disability benefits for this period of time per the provisions of SDCL 62–4–5. This benefit was based on the difference between his combined average weekly pre-injury earnings from both jobs and the amount he was actually earning at Morrell's upon his return. Circuit court reversed Department's award concluding that, although Employee did experience an actual reduction in earnings after he returned to work, this reduction was not the result of the injury Employee sustained. Employee appeals this conclusion.

SDCL 62–4–5 provides for temporary partial disability benefits. It provides:

If, after an injury has been sustained, the employee as a result thereof becomes partially incapacitated from pursuing his usual and customary line of employment,

or if he has been released by his physician from temporary total disability and has not been given a rating to which § 62–4–6 would apply, he shall receive compensation, subject to the limitations as to maximum amounts fixed in § 62–4–3, equal to one-half of the difference between the average amount which he earned before the accident, and the average amount which he is earning or is able to earn in some suitable employment or business after the accident.

Under this statute the employee can receive temporary partial benefits by establishing:

1. That he is partially incapacitated from pursuing his usual and customary line of employment due to his work related injury; or

2. That he has been released by his physician from temporary total disability and has not yet been given a permanent partial disability; and

3. That his present *average* earned income or that amount he is capable of earning at some suitable employment or business is less than what his *average* earned income was prior to his disability.

If the employee makes his requisite showing, then he will receive the difference between his pre- and post-injury average earning amounts, subject to the limitations set forth in SDCL 62–4–3.

In this case circuit court reversed the Department's award of temporary partial benefits for two reasons. First, that Employee's pre-injury earnings were artificially high because of an unusual situation where, for six weeks prior to the injury, Employee was temporarily performing two full-time jobs only to accommodate Safety Kleen. Circuit court reasoned that Employee's earnings from both jobs were not his true "average earnings" because, when the strike ended and he returned work at

2. By our holding in this case we do not mean to disturb our recent holding in *Marnette v. Morgan,* 485 N.W.2d 595, 598 (S.D.1992) that "a disability may be established through testimony other than a doctor" or our holding in *Cozine, supra,* at 552 that "[i]t is the responsibility of a hearing examiner to determine a claimant's loss of use based upon the evidence as a whole." We are only holding that expert testimony is ordinarily required before the Department can set a disability rating based on an employee's loss of use of a body part under SDCL 62–4–6.

Morrell, he never intended to remain at Safety Kleen; rather, he was only going to remain until a replacement worker could be found. Second, circuit court found that Employee's post-injury wages at Morrell were reduced for economic reasons unrelated to Employee's injury. Employee's pre-injury wage rate of $9.75 an hour was reduced to $8.00 an hour due to an implemented contract offer Morrell made to its Union. Since Employee's post-injury wages at Morrell were the same that he would have received if he had not been injured, circuit court concluded that there was no nexus between Employee's reduced wages at Morrell and his injury. Circuit court went on to say that an award of temporary partial disability benefits to Employee, without any causal connection between Employee's injury and the difference between the pre- and post-injury wages, would bestow upon him a benefit which was not intended by SDCL 62-4-5.

SDCL 62-1-1(7) defines the time periods covered by temporary partial and total disabilities as "the time beginning on the date of injury, subject to the limitations set forth in § 62-4-2, and continuing until the employee attains complete recovery or until a specific loss becomes ascertainable, whichever comes first." SDCL 62-4-3 is the statute which provides for temporary total disability compensation. This statute sets forth a rate by which the employee's disability payments are to be determined. This rate, subject to the limitations set forth in the statute, is based on the average weekly wage the employee was earning at the time of his injury. *See* SDCL 62-1-1(1) for a definition of "average weekly wage" and SDCL 62-1-1(3) for a definition of "earnings." Once the rate is established by SDCL 62-4-3 and its implementing statutes, that rate is used for computing benefit payments made during a period of rehabilitation under SDCL 62-4-5.1, permanent partial disability benefit payments under SDCL 62-4-6, permanent total disability benefit payments under SDCL 62-4-7, and death benefits payable to the employee's heirs under SDCL 62-4-12 et seq.

It is interesting to note that the Department used Employee's average weekly earnings from both of his pre-injury jobs for the purpose of establishing Employee's compensation rate. Department then used this rate in setting Employee's temporary total disability benefits and his permanent partial disability benefits. Employers have not appealed this rate-basis computation. We fail to see why temporary partial disability payments should be considered any differently. Our statutory scheme does not differentiate between injuries an employee experiences the first day on his job or the last day on his job; nor does it differentiate between injuries incurred by full-time employees versus temporarily-employed employees. In our opinion circuit court created a "temporary second job" exception to SDCL 62-4-5 for computing pre-injury earnings. We do not see where this exception is either expressed or implied in our statute.

 When we are called upon to interpret the meaning of our worker's compensation statutes, we must keep in mind the following principles. One, "[p]roceedings under the Workmen's Compensation Law ... are purely statutory, and the rights of the parties and the manner of procedure under the law must be determined by its provisions." *Chittenden v. Jarvis,* 68 S.D. 5, 8, 297 N.W. 787, 788 (1941). Two, if the language of a statute is clear, we must assume that the legislature meant what the statute says and we must, therefore, give its words and phrases a plain meaning and effect. *Dubbelde v. John Morrell & Co.,* 473 N.W.2d 500 (S.D. 1991). And three, if the statute has an ambiguity, it should then be liberally construed in favor of injured employees. *Mills v. Spink Elec. Co-op.,* 442 N.W.2d 243 (S.D.1989). While the facts of this case are unique since Employee's injury is attributable to both of his full-time jobs, it is up to the legislature to create any exception and not for this Court.

In addition, Department found in finding of fact XIII that:

Since his injury, [Employee] has been and will continue to be unable to perform work at Safety Kleen because there is no

light-duty work available, and his disability and care regimen preclude a second job.

Employee met his burden of proof on this issue and Employers did not offer any evidence to controvert this finding. Circuit court should not have considered Employee's future plan to leave his employment with Safety Kleen. We reverse the circuit court on this issue.

 The final issue is the question of whether a wage concession agreement should be taken into consideration in computing Employee's post-injury average earnings. Again, SDCL 62–4–5 does not make any provision for this exception. The statute simply requires an employee to establish that his post-injury earnings, or that average amount he is capable of earning, are less than what his pre-injury average earnings were. As mentioned earlier, Employee has met his burden of proof on this element by showing what his actual average wages were and that he is physically incapable of earning more. Circuit court erred in ordering that the wage concession agreement be considered. We reverse.

### CONCLUSION

We affirm circuit court's holding that Employee met his burden of proof that his back injury arose out of his employments. We reverse and remand circuit court's holding that Department did not err in refusing to hear Morrell's evidence anent Employers' right to a dollar-for-dollar credit for sick leave benefits paid to Employee. We affirm circuit court's holding that Employers failed to preserve for appeal their admission against interest argument. We affirm circuit court's remand of Department's permanent partial disability determination with directions that Department not consider any factors that may relate to Employee's personal or social life. We reverse and remand circuit court's holding that expert testimony is not necessary before Department can give Employee a permanent partial disability rating based on a loss of use of a body member. We reverse circuit court's holding that the income from Employee's temporary second job should not be considered by Department in its determination of what temporary partial disability benefits Employee is entitled to under SDCL 62–4–5. We reverse circuit court's holding that wage concessions under a collective bargaining agreement, which occur after an injury, be considered in calculating temporary partial disability benefits.

MILLER, C.J., and HENDERSON, SABERS and AMUNDSON, JJ., concur.

JOHNS, Circuit Judge, for WUEST, J., disqualified.