#27170-r-DG
**2015 S.D. 25**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

PATRICIA WHEELER,                                      Claimant and Appellant,

v.

CINNA BAKERS LLC, an Iowa
Limited Liability Company,
d/b/a CINNABON (EMPIRE MALL),            Employer and Appellee,

and

HARTFORD CASUALTY
INSURANCE COMPANY,                             Insurer and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
HUGHES COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE MARK BARNETT
Judge
\* \* \* \*

JOLENE R. NASSER
N. DEAN NASSER, JR. of
Nasser Law Office, PC
Sioux Falls, South Dakota            Attorneys for claimant and
                                                    appellant.


RICHARD L. TRAVIS
ERIC D. DENURE
May & Johnson, PC
Sioux Falls, South Dakota            Attorneys for employer, insurer,
                                                    and appellees.

\* \* \* \*

CONSIDERED ON BRIEFS
ON FEBRUARY 17, 2015
OPINION FILED **05/06/15**

#27170

GILBERTSON, Chief Justice

[¶1.]    Patricia Wheeler appealed the administrative law judge's (ALJ's) determination that she not be allowed to aggregate her wages from three separate employments in the calculation of her Average Weekly Wage (AWW). The circuit court affirmed the ALJ's determination. Wheeler appeals to this Court. We reverse.

*Facts and Procedural History*

[¶2.]    Wheeler worked at the Cinnabon Store in the Empire Mall in Sioux Falls, South Dakota. Cinna Bakers, LLC, owns Cinnabon, which made Wheeler an employee of Cinna Bakers. Wheeler was also employed by Westside Casino and Get 'N' Go convenience store in Sioux Falls. Wheeler held all jobs concurrently in order to reach the earning level of full-time employment and had done so on a long-term basis with the intent of continuing indefinitely. While working at Cinnabon, Wheeler sustained two separate work-related injuries, which arose out of and in the course of her employment with Cinna Bakers. As a result of her injuries at Cinnabon, Wheeler was unable to work at Cinnabon and her two other concurrently held jobs.[1] After initially denying Wheeler's claim, Cinna Bakers and its insurance company, Hartford Casualty Insurance Co., accepted Wheeler's injuries as compensable. However, the parties disputed whether income from all three of

---

1.    The ALJ found:

> Both injuries additionally required treatment for dental injuries, twenty-four sessions of occupational therapy, seven weeks off from all three of [Wheeler's] concurrently held jobs, and several weeks of reduced hours and restrictions while transitioning to full-time work (each injury).

Wheeler's concurrent employments should be used to calculate her AWW. Wheeler filed a petition and asserted that all three of her concurrent employments should be aggregated to calculate her AWW. The ALJ determined that only Wheeler's wage from Cinna Bakers could be utilized to calculate her AWW. Wheeler appealed to the circuit court, and it affirmed. Wheeler now appeals to this Court.

[¶3.]        Wheeler raises one issue:

> Whether the ALJ and the circuit court erred in holding that Wheeler could not aggregate her earnings from three separate employments to calculate her AWW after she was injured on the job at one employment.

*Standard of Review*

[¶4.]        While our standard of review of an agency decision is set forth in SDCL 1-26-37,[2] the parties agree the question before the Court is one of statutory interpretation. Statutory interpretation is a question of law reviewed de novo. *Whitesell v. Rapid Soft Water & Spas, Inc.*, 2014 S.D. 41, ¶ 6, 850 N.W.2d 840, 842 (citing *Fair v. Nash Finch Co.*, 2007 S.D. 16, ¶ 7, 728 N.W.2d 623, 628).

*Decision*

[¶5.]        Wheeler asserts on appeal that the ALJ and the circuit court erred when they only used her wage from Cinna Bakers to determine her AWW. Wheeler argues her wages from all three of her concurrent employments should have been

---

2.    SDCL 1-26-37 provides:

> An aggrieved party or the agency may obtain a review of any final judgment of the circuit court under this chapter by appeal to the Supreme Court. The appeal shall be taken as in other civil cases. The Supreme Court shall give the same deference to the findings of fact, conclusions of law, and final judgment of the circuit court as it does to other appeals from the circuit court. Such appeal may not be considered de novo.

aggregated to calculate her AWW. In support of her argument, Wheeler points out that a majority of jurisdictions allow for the aggregation of wages from concurrent employments. Arthur Larson, *Larson's Workers' Compensation Law*, § 93.03[1][a] (2014). Only a small number of states do not permit the aggregation of wages from concurrent employments. *Id.* Of the jurisdictions that allow for the aggregation of wages, most only permit aggregation when the employments are "similar" or "related." *Id.* Most of the remaining jurisdictions that permit aggregation allow earnings to "be combined whether or not the employments were related or similar." *Id.* Professor Larson calls this last position the "growing minority rule." *Id.* Professor Larson endorses the "growing minority rule" when calculating the AWW.[3]

[¶6.]        Although a majority of jurisdictions aggregate the AWW in some manner, we have not yet addressed whether South Dakota's workers' compensation scheme permits the aggregation of wages from concurrent employments when, as here, the injuries arose out of and in the course of only one of those employments. While other jurisdictions and Professor Larson may provide persuasive authority on the matter, the issue before the Court is one of statutory interpretation. The

---

3.        After criticizing nonaggregation and aggregation of wages in similar or related employments, Professor Larson endorses the "growing minority rule":

> From the point of view of achieving a result that makes sense in relation to the claimant's real earning capacity in the past and future, . . . the only satisfactory calculation, particularly when the hourly rate of pay in the concurrent jobs is sharply different, is to combine the earnings in the [concurrent] jobs, rather than to round out to a full-time basis the hourly rate in the employment in which claimant was engaged at the time of injury.

Larson, *supra* ¶ 5, at § 93.03[3].

primary purpose of statutory interpretation is to discover legislative intent. *Bostick v. Weber*, 2005 S.D. 12, ¶ 7, 692 N.W.2d 517, 519 (citing *State v. Myrl & Roy's Paving, Inc.*, 2004 S.D. 98, ¶ 6, 686 N.W.2d 651, 653). Our first step in determining legislative intent is to look at the plain language of the statute. *See City of Rapid City v. Anderson*, 2000 S.D. 77, ¶ 7, 612 N.W.2d 289, 291 (quoting *Dahn v. Trownsell*, 1998 S.D. 36, ¶ 14, 576 N.W.2d 535, 539). "Words and phrases in a statute must be given their plain meaning and effect. When the language in a statute is clear, certain and unambiguous, there is no reason for construction, and the Court's only function is to declare the meaning of the statute as clearly expressed." *Id.* "A statute or portion thereof is ambiguous when it is capable of being understood by reasonably well-informed persons in either of two or more senses." *Petition of Famous Brands, Inc.*, 347 N.W.2d 882, 886 (S.D. 1984) (quoting *Nat'l Amusement Co. v. Wis. Dep't of Taxation*, 163 N.W.2d 625, 628 (Wis. 1969)). If statutes are ambiguous or lead to absurd and unreasonable results, we will utilize the rules of statutory construction to discover the true legislative intent. *See id.* at 885; *Anderson*, 2000 S.D. 77, ¶ 7, 612 N.W.2d at 291 (quoting *Dahn*, 1998 S.D. 36, ¶ 14, 576 N.W.2d at 539); *State v. Davis*, 1999 S.D. 98, ¶ 7, 598 N.W.2d 535, 537-38. Additionally, if we conclude the language of the statutes is ambiguous or leads to an absurd and unreasonable result, we "liberally construe[ the statutes] in favor of [the] injured employee[]" because this is a workers' compensation case. *Hayes v. Rosenbaum Signs & Outdoor Adver., Inc.*, 2014 S.D. 64, ¶ 28, 853 N.W.2d 878, 885 (quoting *Caldwell v. John Morrell & Co.*, 489 N.W.2d 353, 364 (S.D. 1992)); *Mills v. Spink Elec. Co-op*, 442 N.W.2d 243, 246 (S.D. 1989) (holding workers' compensation

is "remedial" in nature and should though be "liberally construed in favor of injured employee[]").

[¶7.]    Our first step is to analyze the plain meaning of the statutes in question.  Workers' compensation statutes prescribe the calculation for the AWW. There are three statutes that apply to such calculations.  The first statute provides:

> As to an employee in an employment in which it is the custom to operate throughout the working days of the year, and who was in the employment of the same employer in the same grade of employment as at the time of the injury continuously for fifty-two weeks next preceding the injury, except for any temporary loss of time, the average weekly wage shall, where feasible, be computed by dividing by fifty-two the *total earnings of the employee* as defined in subdivision 62-1-1(6), during the period of fifty-two weeks.  However, if the employee lost more than seven consecutive days during the period of fifty-two weeks, then the division shall be by the number of weeks and fractions thereof that the employee actually worked.

SDCL 62-4-24 (emphasis added).

[¶8.]    The second method prescribed by statute is not utilized unless SDCL 62-4-24 does not apply.  The second statute provides:

> As to an employee in an employment in which it is the custom to operate throughout the working days of the year, but who is not covered by § 62-4-24, the average weekly wages shall, where feasible, be ascertained by computing the *total of the employee's earnings* during the period the employee worked immediately preceding the employee's injury at the same grade of employment for the employer by whom the employee was employed at the time of the employee's injury, and dividing such total by the number of weeks and fractions thereof that the employee actually worked.  However, if such method of computation produces a result that is manifestly unfair and inequitable or if by reason of the shortness of time during which the employee has been in such employment, or the casual nature or terms of the employment, it is impracticable to use such method, then regard shall be had to the average weekly amount which during fifty-two weeks previous to the injury was being earned by a person in the same grade, employed at the same

work, by the same employer, or if there is no person so employed, by a person in the same grade, employed in the same class of employment in the same general locality.

SDCL 62-4-25 (emphasis added).

[¶9.]    The third statute is used to calculate the AWW if neither SDCL 62-4-24 nor SDCL 62-2-25 apply.  The third statute provides:

As to an employee in an employment in which it is the custom to operate throughout the working days of the year and where the situation is such that it is not reasonably feasible to determine the average weekly wages in the manner provided in § 62-4-24 or 62-4-25, the average weekly wages shall be determined by multiplying the *employee's average day's earnings* by three hundred, and dividing by fifty-two.

SDCL 62-4-26 (emphasis added).

[¶10.]    All three AWW statutes utilize the definition of "earnings" as defined by SDCL 62-1-1(6) to calculate the AWW.  *See* SDCL 62-4-24; SDCL 62-4-25; SDCL 62-4-26.  The statute defining "earnings" provides:

"Earnings," the amount of compensation for the number of hours commonly regarded as a day's work *for the employment in which the employee was engaged at the time of his injury.*  It includes payment for all hours worked, including overtime hours at straight-time pay, and does not include any sum which the employer has been accustomed to pay the employee to cover any special expense entailed by him by the nature of his employment; wherever allowances of any character made to an employee in lieu of wages are specified as a part of the wage contract, they shall be deemed a part of his earnings[.]

SDCL 62-1-1(6) (emphasis added).

[¶11.]    The critical phrase in SDCL 62-1-1(6) is "*for the employment in which the employee was engaged at the time of his injury.*"  (Emphasis added.)  The circuit court held the italicized phrase unambiguously referred to the specific employment in which an employee was engaged (i.e., engaged in the more narrow sense of

-6-

"actively engaged") at the time of the injury. Wheeler contends the italicized phrase is subject to another reasonable interpretation. She argues "employment" and "engaged" have a broader connotation related to the status of the individual, i.e. being in the state of employment. Wheeler points out that she also "was engaged at the time of [her] injury" in her other concurrent employments and intended to remain concurrently employed indefinitely. Because, as Wheeler argues, her proposed interpretation is equally reasonable and we construe a statutory ambiguity in the employee's favor, Wheeler asks us to reverse the ALJ and the circuit court and hold the AWW statutes allow for aggregating an employee's wages from concurrent employments. We agree.

[¶12.] The phrase—"for the employment in which the employee was engaged at the time of his injury"—in SDCL 62-1-1(6) is ambiguous because it is "capable of being understood by reasonably well-informed persons in either of two or more senses." *See Petition of Famous Brands, Inc.*, 347 N.W.2d at 886. "Earnings" uses the term "employment" in its definition. SDCL 62-1-1(6). "Employment" is not defined in the workers' compensation statutes relevant to the calculation of the AWW. *See* SDCL 62-1-1. However, "employment" is defined in SDCL 61-1-10.[4] "Employment" is "any service performed, including service in interstate commerce, by: . . . (2) Any individual who, under the usual common-law rules applicable in determining the employer-employee relationship has the *status* of an employee."

---

4.  Pursuant to SDCL 2-14-4, "Whenever the meaning of a word or phrase is defined in any statute such definition is applicable to the same word or phrase wherever it occurs except where a contrary intention plainly appears." No contrary intention appears in either SDCL 61-1-10 or SDCL 61-1-1. Therefore, the definition of employment transfers.

SDCL 61-1-10 (emphasis added). The definition of "employment" as promulgated by the Legislature is concerned with the *status* of the individual, i.e. the employee, rather than the specific or immediate activity. Wheeler maintained the *status* of employee at her other occupations at all times relevant to this case.

[¶13.] Moreover, "engaged" is not defined by our workers' compensation statutes. "Engaged" means "to put under pledge; to pledge; to place under obligations to do or forbear doing something." *Webster's New International Dictionary* 847 (2d ed. 1954). Wheeler was "engaged" in her other occupations at the time of her injury in the sense that she was under a pledge and a continuing set of obligations to those employments, i.e., she maintained the *status* of an employee with her other employments even though she was not actively and immediately doing work in those employments when she was injured at Cinnabon. It is undisputed that Wheeler was "concurrently employed" at Cinnabon, Westside Casino, and Get 'N' Go convenience store at all times relevant to this case. She was "engaged" in those employments to reach the earning level of full time employment and had done so on a long term basis with the intention of doing so indefinitely. Thus, in one sense, Wheeler "was engaged at the time of her injury" in her other employments because she maintained the status of employee with her other employments.[5] In another sense, she "was engaged at the time of her injury" only

_____

5. In addition, this broader definition of "engage" is consistent with other statutes in the workers' compensation title. For example, SDCL 62-4-5.1 provides, "[O]nce such employee is *engaged* in a program of rehabilitation . . . the employee shall receive compensation . . . during the entire period that the employee is *engaged* in such program[.]" (Emphasis added.) The word

(continued . . .)

-8-

with Cinnabon in that she was actively working for Cinnabon. Therefore, there are two reasonable interpretations of the earnings statute, and it is ambiguous. Because the language used in SDCL 62-1-1(6) is ambiguous, we interpret the definition of "earnings" used to calculate Wheeler's AWW in her favor, and Wheeler is entitled to aggregate her wages from her concurrently held employments to determine her "earnings" under any of the three AWW-computation statutes. *See Hayes*, 2014 S.D. 64, ¶ 28, 853 N.W.2d at 885 (quoting *Caldwell*, 489 N.W.2d at 364).

[¶14.]     Our interpretation is further buttressed by our rules of statutory construction. First, the AWW statutes indicate a worker's *total* earnings should be used to calculate the AWW. *See* SDCL 62-4-24; SDCL 62-4-25; SDCL 62-4-26. Wheeler's total earnings include the wages she received from all of her concurrently held jobs, not just her wages from Cinnabon. Second, the broader construction of earnings is more consistent with the other workers' compensation statutes. "[I]t is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Expungement of Oliver*, 2012 S.D. 9, ¶ 9, 810 N.W.2d 350, 352 (quoting *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133, 120 S. Ct. 1291, 1301, 146 L. Ed. 2d 121 (2000)) (internal quotation marks omitted). We said in *Caldwell* that the primary purpose of workers' compensation is to fairly compensate the employee for his or her loss of income-earning ability:

---

(. . . continued)
"engaged" refers to a *status* of being enrolled or committed to participate, not actually and immediately performing program requirements.

> Our [workers' compensation laws are] designed to compensate an employee or his family for the loss of his *income-earning ability* which loss is occasioned by an injury, disablement, or death because of an employment related accident, casualty, or disease. [Workers' compensation] guarantees employees compensation irrespective of tort law considerations and in return employees forego the right to a one hundred percent recovery. Employers, on the other hand, accept responsibility for injuries they might not otherwise be responsible for at common law and in return their liability is fixed and limited.

489 N.W.2d at 362 (emphasis added). "[S]tatutes [are] governed by one spirit and policy, and [are] intended to be consistent and harmonious in their several parts and provision." *Lewis & Clark Rural Water Sys., Inc. v. Seeba*, 2006 S.D. 7, ¶ 12, 709 N.W.2d 824, 831 (quoting *M.B. v. Konenkamp*, 523 N.W.2d 94, 98 (S.D. 1994)) (alterations in *Lewis & Clark Rural Water Sys., Inc.*).

[¶15.]     Third, when the circuit court affirmed the ALJ and reasoned that the workers' compensation statutory scheme did not permit aggregation of wages, the circuit court noted, "[C]arriers would be forced to set higher premiums to cover unknown risks," (i.e., wages earned at unknown other jobs). The circuit court also noted that requiring the employer to pay higher rates to cover an employee's other jobs or lost income-earning ability would be "manifestly unfair." While it is true higher rates are undesirable, Professor Larson responds:

> [F]airness to the employee and fairness to the employer/carrier are not symmetrical, and cannot be judged by the same standards. To this one employee, this one loss is everything–he or she has nothing against which to offset. To the employer, and even more to the carrier, this is just one case among many. . . . Today this employer-carrier may be saddled with a slight extra cost; tomorrow positions may be reversed. . . .
>
> Concurrent employment is by no means the only compensation situation in which employers and carriers must console

> themselves with the reminder that these things will all "wash out" in the end. . . .
>
> For the injured worker, however, there is no such consolation. That worker, alone, bears the burden of being reduced to $20 a week when his or her actual earnings may have been five times that much. That is real unfairness. By comparison, the "unfairness" to the employer, in the form perhaps of a slight premium increase, eventually offset by the times he or she will benefit by the same rule, is an artificial construct with no genuine content.

Larson, *supra* ¶ 5, at § 93.03[1][c]; *see also Foreman v. Jackson Minit Markets, Inc.*, 217 S.E.2d 214, 216-17 (S.C. 1975) (interpreting substantially similar statutes to those of South Dakota and holding the definition of "earnings" did not preclude aggregation of wages because aggregation of wages was the only fair way to compensate employees for lost earning capacity).

[¶16.]     Lastly, we are persuaded to adopt the "growing minority rule," as Professor Larson calls it, and allow for aggregation of wages from all concurrently held employments, not just similar or related employments. We see no reason why the employments must be similar or related if workers' compensation "is designed to compensate an employee or his family for the loss of his *income-earning ability*." *Caldwell*, 489 N.W.2d at 362 (emphasis added). Professor Larson states:

> The rule refusing to combine earnings from concurrent employments unless they are "similar" or "related" is unnecessary from the point of view of statutory construction, unsound as a matter of accomplishing the purposes of the legislation, inhumane from the point of view of the claimant, and logically absurd as to the distinctions on which it is based.

Larson, *supra* ¶ 5, at § 93.03[1][c].

*Conclusion*

[¶17.]     The definition of "earnings" in SDCL 62-1-1(6) is ambiguous.  We, therefore, interpret "earnings" in Wheeler's favor.  Because "earnings" is utilized to calculate a worker's AWW, we hold that SDCL 62-4-24, SDCL 62-4-25, and SDCL 62-4-26 allow for the aggregation of wages when an injury at one employment renders the worker incapable of performing that employee's other concurrently held employments.  We also adopt the "growing minority rule" concerning aggregation.  Consequently, we reverse the ALJ and the circuit court.

[¶18.]     ZINTER, SEVERSON, WILBUR, and KERN, Justices, concur.